JAMES O'FLYNN v. STATE OF MISSISSIPPI,
JAMES AND CHARLES O'FLYNN v. STATE OF MISSISSIPPI.

[43 South. Rep., 82.]

1. CONTEMPT. *Jury trial.*

In a proceeding for contempt of court defendants are not entitled to a trial by jury.

2. SAME. *Sworn answer. Evidence.*

In a proceeding for a constructive contempt, the sworn answer of contemnor does not preclude the hearing of evidence to establish the contempt charged.

FROM the circuit court of Jones county.

HON. ROBERT L. BULLARD, Judge.

The appellants, James and Charles O'Flynn, having been adjudged guilty of contempt of court and sentenced to pay a fine and to be imprisoned in the county jail, appealed to the supreme court.

There were two cases, one against James and the other against him and Charles jointly, the latter being based on matters connected with the former. The two cases involved the same questions of law, and by agreement of counsel were tried as one.

At the September, 1906, term of the circuit court of Jones county the grand jury returned an indictment for the unlawful sale of intoxicants against a woman, Madame Moseley, of Laurel, and the sheriff went there with a capias for her arrest. The appellant, James, happened to be at the Laurel railway station when the sheriff reached there, and, overhearing a conversation between that officer and his deputy, learned the purpose of the officer's visit to the town; whereupon he called a hack driver, one Allen, and, paying him twenty-five cents, ordered him to drive at once to the woman's house and notify

her to close her place of business immediately and leave the town. The hack driver, in ignorance of appellant's motive, carried out his orders, and as a result when the sheriff reached the woman's place of business it was closed; and the Madame had departed for parts unknown. The deputy sheriff had noticed the action of the appellant at the depot, and, surmising that he had sent the hack driver for the purpose mentioned, subsequently found him (Allen) and learned from him that appellant James had, in the manner above stated, given the woman warning of the sheriff's coming. The sheriff reported the facts to the court, and the district attorney filed an information against the appellant, James, charging him with contempt of court. A few days after the arraignment of James on the above charge, and before trial of the matter, he and his brother, the appellant Charles, approached the hack driver, Allen, who had been subpœnaed as a witness for the state against James, and by abusive and threatening language sought to intimidate him from appearing and testifying in the case. The district attorney, being advised in the premises, filed an information against James and Charles, jointly, reciting the attempted intimidation, and charged them with contempt of court. The two appellants, in response to process, appeared in court and made answer under oath, denying the averments of the information filed against them jointly, and pretended to purge themselves of the contempt charged. James made answer in like manner to the first information against him individually. The appellants then moved the court to dismiss the proceedings and to discharge them, on the ground that their sworn answers denied the allegations of the respective informations, and because, as they contended, evidence *aliunde* was not admissible in cases of contempt. The motion was overruled in each of the cases. Appellants then asked for a trial by jury, but their motion therefor was overruled in each case. Over the protests of appellants the court proceeded to hear testimony touch-

ing the charges against them; the two cases having been consolidated by consent of .parties. The state offered the testimony of the sheriff, the deputy sheriff, the hack driver, Allen, and others, to all of which appellant objected, but the court below overruled the objection. Appellants offered no evidence, contending that their sworn answers should be regarded as the only admissible evidence. The court below adjudged the appellant James guilty of the charge set forth in the information against him individually, and fined him $50 and costs; and also adjudged the appellants, James and Charles, each guilty on the charge set forth in the information against them .jointly, and fined them each $100 and sentenced them each to thirty days' imprisonment in the county jail.

*Stone Deavours,* and *R. E. Halsell,* for appellants.

There are two kinds of contempt of court, to wit: direct contempt, committed in the presence of the court; and indirect, or constructive contempt, committed beyond the presence of the court. If, in these two cases, appellants were liable for contempt, they were, of course, liable for indirect or constructive contempt, inasmuch as they were in Laurel, eight miles from Ellisville, where the court was being held, when the offenses were committed.

When the appellants filed their sworn answers denying the allegations of the information in the two cases, they were entitled to a discharge. In support of this proposition we submit the following authorities:

In vol. 4, Ency. Pl. & Pr., 795, it is stated: "In all charges of contempt arising out of proceedings in suits in common law courts or in suits cognizable at law as distinguished from equity, the sworn answer of the contemnor, validly denying or purging the contempt, is held conclusive and unanswerable." It is further said on the same page: "Some authorities especially emphasize the conclusiveness of the contemnor's

answer in the case of proceedings to punish the commission of constructive contempts."

In vol. 7, Am. & Eng. Ency. Law (2d ed.), 71, the same rule is stated as follows: "The common law rule was that a person charged with contempt of a court of law was made to answer the contempt on oath, and if by his oath he cleared himself of the contempt he was discharged. No testimony was taken by the court to rebut his own; but should he swear falsely, he was subsequently prosecuted for perjury." A long list of authorities is cited in support of this text.

In vol. 9, Cyc. of Law & Procedure, 44, the rule is stated as follows: "At common law where the answer of the accused squarely met and denied the alleged contempt, such answer was conclusive and no further evidence could be received, and this rule has been followed in many cases. Authority, however, is not wanting in support of the chancery rule, which permits inquiry to be made into the truth of the answer filed by the accused." The court will note the great number of authorities that are cited in support of the common law rule, and the very few cases that are cited in support of the contrary rule. And the court will bear in mind that the common law as to contempts prevails in Mississippi, there being no statutory regulations touching that subject that are applicable in this case.

*In re Edward S. May,* 1 Fed. Rep., 743, the following is found: "It is a cardinal rule in proceedings for a criminal contempt that the answer of the respondent cannot be traversed and must be taken as true. If false, the government is remitted to a prosecution for perjury." Several cases are cited in support of this statement in the decision.

*In Percival v. State,* a Nebraska case, vol. 50 Am. St. Rep., 568, we quote from the syllabus as follows: "If a newspaper publication alleged to be a contempt of court is indefinite in its meaning and application, and not libelous *per se,* and only be-

comes so and made to apply to the court by the use of innuendoes, and is fairly susceptible of an innocent meaning, so far as any reflection upon the court is concerned, and defendant answers under oath that he used it in a sense not libelous, and declares that he intended no imputation from the court, either impugning the motives or integrity of the judge, or to embarrass the administration of his justice, his answer must be taken as conclusive." The court will note that the doctrine of this case, is that the court is restricted to an examination of the defendant's answer as to what the *facts* of the case are; and this same doctrine is enunciated in the case of *In re May,* above referred to. Of course, if the defendant's answer itself shows by its statement of facts that he has committed a contempt, the court could judge him guilty of the contempt. But the practically universal doctrine seems to be that the court cannot go outside of the defendant's answer in order to determine what the facts of the case are. From *In re Robinson,* a North Carolina case, vol. 53 Am. St. Rep., 595, we quote the last paragraph of the syllabus, as follows: "In a proceeding to punish a person for contempt for a publication made in a newspaper, the answer of the respondent, as to the intent with which the publication was made, is conclusve." The two concluding paragraphs of the decision in this case, found on page 600, are applicable to this case. We quote these paragraphs: "But respondent also puts his defense on another ground; he says, under oath: 'Affiant states that said publication was not made with intent to misrepresent this court, or to bring this court into contempt and ridicule.' It is not for the court to judge whether this was false or true; the law made him his own judge—his own trier—and as to how well he did this he will answer at another bar; we must take his verdict."

And we are not without authority in support of our contention in the decisions of the supreme court of Mississippi, though a case involving the exact question has not been decided so

far as we have been able to find by this court. But in the
case of *Vertner* v. *Martin,* 10 Smed. & M., 103, I quote from
the first paragraph of the syllabus: "It is an unusual mode
of practice to permit a party charged with a contempt to put
in a plea by an attorney, without an appearance in person;
*the regular mode is for him to answer interrogatories upon oath,
so as to clear himself of the contempt."* Clearly the idea here
is that if the party responds under oath denying the matters
with which he is charged as constituting a contempt of court,
that such answer by him is conclusive on the court. In *Shat-
tuck* v. *State,* 51 Miss., 50, it is stated on page 55: "But if
the act is alleged to be in disregard of the process of the court,
or disobedience of its precepts, or done, not in its presence,
that common justice should require that the court should in-
quire into the facts and afford the offender an opportunity to
purge himself. The practice is to serve a rule on the party to
show cause." We think it is fair to infer from the two cases
last cited that the court intended to say that if the accused
person came into court, and under oath denied the allegations
against him, that such a course purged him of contempt, and
ended the matter so far as the court was concerned. We call
the court's further attention to the full and complete discussion
of the law of contempt, contained in *Ex parte Walter Hickey,* 4
Smed. & M. (appendix), 771, in which Judge THACHER deliv-
ered an opinion. In that opinion Judge THACHER goes further
than it is necessary for us to ask the court to go in order to
reverse this case.

In view of the foregoing authorities, we feel safe in saying
that this court will hold that the court below erred in not dis-
charging the appellants when they filed sworn answers denying
the allegations of the respective informations.

We consider that, under the authorities, the action of the
court below in failing to discharge the appellants when they
filed their sworn answers is conclusive of the case; and there-

fore do not consider it necessary to argue the other assignments of error at any length.

We call the court's special attention to the fact that there is nothing in the testimony which could authorize the court below to believe that the appellants knew at the time they sent the woman word to get out of town, even if they sent such word, that the sheriff of the county had process for her arrest; and we believe that it can be safely said that there could be no contempt of court unless there was knowledge on the part of the appellants that the sheriff of the county had process for execution. In other words, our view of the matter is that a contempt of court must be predicated of an act knowingly done by the party. And we submit on the whole testimony the finding of the court that the defendant was guilty of a contempt was erroneous, and therefore the judgment ought to be reversed.

The court below was without jurisdiction, as the information in each of the two cases here before the court failed to show sufficient facts to constitute contempt. 9 Cyc., 38, sec. 2; Code 1892, § § 1221, 1222, provide the only manner in which the court could have proceeded against appellant. *Ex parte Adams*, 25 Miss., 883.

The answer of the contemnors having fully denied every allegation of contempt, the contemnors' answers were conclusive. 9 Cyc., 44, sec. 2, note m. The author says: "Authority, however, is not wanting in support of the chancery rule which permits inquiry to be made into the truth of the answer filed by the accused." An examination of the authorities referred to will reveal the fact that they were every one cases where the accused had violated an injunction.

The burden of proof in proceedings of this character is on the state, and the strict rules of evidence which obtains in criminal cases must be applied. 9 Cyc., 45, 46. We submit

the evidence in the case at bar did not measure up to this stand-ard, and there was not sufficient evidence to convict.

The court being without jurisdiction, the appellants should have been proceeded against by indictment, and were entitled to a trial by jury.

The judgment of the court below should have been for appel-lants, and we ask a reversal.

*R. V. Fletcher,* assistant attorney-general, for appellee.

The court will note that there are two cases here which, although separate, were tried together, inasmuch as they in-volve the same questions of law; they having, in fact, been consolidated by agreement of counsel in the court below.

It is earnestly contended by the learned counsel for appel-lants that the sworn answers of their clients were conclusive, and that nothing remained for the court below to do, upon the giving in of these answers in the two cases, except to discharge the defendants without making further inquiry as to the truth of the charges. It should be borne in mind that appellants, in their answers, did not seek to purge themselves of contempt by disclaiming any intention to commit a contempt; they simply traversed the facts. They denied that they had com-mitted the various acts charged against them. By their answers they admit that the allegations of the petitions, if true, would constitute a contempt of court. Otherwise the defense would have been by demurrer to the informations.

Counsel rely upon the statement made in 4 Ency. Pl. & Pr., 795, and it must be admitted that the language of the text supports the contention. But a careful examination of the cited cases shows that they do not support the conclusion of the text, or rather that the text is not applicable to a case such as the one now before the court.

Thus *Levington* v. *Lucas,* 6 Ala., 147, a civil case, holds merely that one cited for failing to appear as a witness may

*give evidence* in his own behalf. Surely, but there is nothing in the opinion to suggest that such evidence is to be taken as conclusive.

The case of *Rice* v. *Small,* 1 Del., ch. 68, decides nothing. The question never gets further than a *quaere.* It may be said that this was a chancery proceeding, and it is now everywhere admitted that in a chancery proceeding, the truth of the answer may be inquired into.

I do not refer to the cases cited from the English chancery reports, since the rule in chancery is now well settled.

The case of *Rex* v. *Wright,* 2 Stra., 915, a case in the English King's Bench, does not in any way support the text. In that case there was no issue as to the answer, but simply a question as to its sufficiency in law.

The case of *Buck* v. *Buck,* 60 Ill., 105, was a chancery proceeding, and affirms the right of the court to inquire into the truth of an answer. What there is said about proceedings in courts of law is pure dictum, and cannot be taken as authority.

It is admitted that the case of *Welch* v. *People,* 30 Ill. App., 399, supports the text and the contention of counsel. But I call attention to the exhaustive brief of counsel for appellee in that case, and especially to the case there cited, to wit: *State* v. *Matthews,* 37 N. H. 450; *Bates case,* 55 N. H., 352; *Dabbs* v. *State,* 55 Ga., 272; *Clow* v. *State,* 24 Tex., 12; *Seimott* v. *State,* 11 Lea (Tenn.), 281; *Henry* v. *Ellis,* 49 Iowa, 206. These authorities, if no others are produced (and I am by no means limited to these) are at least sufficient to offset the authorities upon which this Illinois decision rests. It is believed that all the other cases cited in the second note at page 795 of the Ency. Pl. & Pr., are discussed and cited in the *Welch case, supra.* All these cases, so far as I have been able to examine them, rest upon the statement of Blackstone in 4 Bl. Com., 483.

The case of *Smith* v. *Smith,* 14 Abb. Pr. Rep. (N. Y.), 130,

is a clear-cut decision in favor of the right to contradict the showing made by the answer, and this finding was subsequently upheld on appeal.   See same case in same volume, at page 468.

Reviewing some of the cases in note 3 (supposed to be particularly applicable to constructive contempts), the case of *People* v. *Few,* 2 Johns, 289, is no authority.   In that case, the contemnors purged themselves of contempt by disclaiming any intentional disrespect; quite a different proposition from tendering an issue of fact.   That decision was proper in any view of the law, since the intention is the gist of the offense (a publication supposed to reflect on the court) and no one but respondent can judge as to motives and intentions.

The Indiana authorities cited in support of the text undoubtedly hold to the rule that the sworn answer cannot be overthrown.

My object in thus discussing these authorities is not to show that no such rule exists, but to demonstrate that it is by no means so widely accepted as the text and the citations would indicate.   Indeed, the authorities are so divided that it would be difficult to determine the weight of authority.

In addition to the New Hampshire, Tennessee, Iowa, Texas and Georgia cases already cited in discussing the *Welch case, supra,* I call attention to *Murray's case,* 7 Mont., 251, where it is said:   "The defendant disclaims in his affidavit any intention to treat the court with slightest contempt in publishing said telegram; but the court is not bound by such disclaimer, but may inquire into the truth of the matter."

In *State* v. *Green, et al.,* 16 W. Va., 864, the court holds that "in proceedings of this character the weight of the authorities is in favor of the admission of other evidence than the answers of the defendants to the rule; and in our judgment this is the proper rule."   Many authorities are cited.

In the late case of *Battle* v. *Lumber Co.,* 72 S. C., 322, the court plants itself squarely on the chancery rule as being sup-

ported by sound reason, and declines to follow the alleged common law rule as to the conclusiveness of the answer. In that case will be found an explanation of *In re Gorden,* 8 S. C., 390, a case often found cited as authority for appellants' contention.

I have referred above to the holding of an Illinois court which supports the contention of appellants. I call attention to a late decision of the supreme court of that state, adhering to the rule in criminal contempts, but holding that it does not apply to civil contempt. The reasoning of the opinion seems to be exceedingly inconclusive, and illustrates the sophistries in which courts will sometimes. indulge in an effort to conform to obsolete rules entirely overruling reason and common sense.

*O'Brien* v. *People,* 216 Ill., 354, is the case referred to, and in this case the chancery rule is extended to all "civil contempts." See pages 368 and 369 of the opinion.

In the case of *In re Young,* 137 N. C., 552, the court heard the evidence and the supreme court held that the respondent could purge himself only where "the intention is the gravaman of the offense," citing *In re Graham,* 129 N. C., 481, and *Baker* v. *Cardon,* 86 N. C., 116. A merely casual glance through the vast number of adjudged cases cited in any digest will show that in a great many cases evidence was heard on the issue made up by information and answer, without any point being made as to the competency of proof.

The ancient common law rule, if, indeed, Blackstone states it correctly, has been blindly followed in some states, and in certain federal courts without questioning its soundness. The tendency of modern decisions is to abandon a rule not based on any sound reason and at war with public policy. As is well said by a standard authority, after stating the rule at common law and the contrary rule in equity: "The rule which prevails in courts of chancery by which the entire question of the contempt, including the truth of the contemnor's

testimony, is tried in one proceeding would seem to be the more reasonable practice. It is less cumbersome, more effective, and decidedly more analagous to the common law practice in all other respects. 7 Am. & Eng. Ency. Law (2d ed.), 72. This authority discussed the alleged reason of the distinction between the rules in the two forms and rejects the distinction as unsound.

Finally, see the case of *Huntington* v. *McMahon,* 48 Conn., 175. This court is not committed as yet to the absurd doctrine which Blackstone cites as being the common law rule, and should never so commit itself. Why should a criminal court have its hand tied in this manner? To establish this rule would mean that no contempt of court could ever be punished. All that would be necessary to escape punishment would be for the contemnor to file his sworn answer denying everything, and calmly pursue the even tenor of his way. If it be argued that he may be prosecuted for perjury (and that was the reason for the so-called common law doctrine), it may be answered that the tendency of the law in modern times is not to multiply issues and invite a multiplicity of actions, but to simplify procedure whenever possible, and settle all questions expeditiously and finally, without unnecessary delays.

As to the point that the trial should have been by jury, the unanimous current of authority is the other way. 4 Ency. Pl. & Pr., 789.

I do not care to discuss the sufficiency of the evidence to support the finding, since the record is before the court. It cannot be said that the circuit judge decided the case without evidence, and his decision will not be disturbed unless clearly erroneous.

MAYES, J., delivered the opinion of the court.

These two cases being proceedings against appellants for contempt, and involving the same question, we consider them

together. The district attorney filed an information in the circuit court against James and Charles O'Flynn, charging them with constructive contempt. This information was sworn to and citation issued thereon for appellants. They appeared, in obedience to the citation, and made answer under oath, denying the statements of the information and purging themselves of the contempt charged against them. After they had filed their answer denying the allegations of the information, and over the protest of the contemnors, the court proceeded to hear testimony offered for the purpose of proving the charges against the appellants, alleged in the information as constituting the contempt. Objection was made by appellants to the hearing of any testimony on this motion in proceeding for contempt, which was overruled by the court, whereupon the appellants excepted, and asked that the matter be tried by a jury. This was also overruled by the court.

The court proceeded to hear the testimony, and on the facts adjudged appellants guilty of contempt, and proceeded to fine them. From this action of the court an appeal is prosecuted.

We do not think it necessary to discuss the error assigned because of the court's action in denying appellants the right of trial by jury in this proceeding for contempt, further than to say that the overwhelming weight of authority is that in such cases they were not entitled to a jury trial. 4 Ency. Pl. & Pr., 789; 9 Cyc. Law & Proc., 47.

The main complaint in this record is that the court had no right to hear the testimony to prove the charges alleged in the information, after appellants had answered under oath denying the charges. It is contended that the answer under oath of the contemnors entitled them to a discharge, and that the matter could not be inquired into further. It seems to have been the ancient common law rule, now wisely departed from by most modern authorities, that where a person was charged with constructive contempt of court, and made answer to the

contempt proceedings on oath, if by his oath he cleared him-
self of the contempt, he was discharged. Under these older
cases, no testimony could be heard by the court to disprove the
answer under oath, but it must be taken as true, and the con-
temnor discharged, the only recourse being that he might be
subsequently prosecuted for perjury, if he swore falsely. We
do not feel warranted in following these older cases upon this
subject, and see no reason why a court should be precluded
from questioning the truth of the answer made in a proceeding
for contempt against a party, by taking testimony to prove that
the answer is untrue. To hold this would be to hamper the
courts in the administration of the law. We adhere to the rule
which is adopted by the supreme court of the United States in
a very recent case on this subject, the case of the *United States*
v. *Shipp, et al.,* reported in the advance sheets of the United
States supreme court, vol. 5, p. 165, date Feb. 1, 1907.
The supreme court of the United States in passing upon this
very question, that is to say, the question of constructive con-
tempts, says, on page 167: "Another general question is to
be answered at this time. The defendants severally have
denied under oath in their answer that they had anything to
do with murder. It is argued that the sworn answers are
conclusive; but in this proceeding they are to be tried, if they
so elect, simply by their oaths. It has been suggested that the
court is a party, and therefore leaves the facts to be decided
by the defendant. But this is a mere afterthought, to explain
something not understood. The court is not a party. There
is nothing that affects the judges in their own persons. Their
concern is only that the law should be obeyed and enforced, and
their interest is no other than that they represent in every case.
On this occasion we shall not go into the history of the motion.
It may be that it was an intrusion or perversion of the canon
law, as is suggested by the propounding of interrogatories, and
the very phrase, 'purgation by oath.' If so, it is a fragment

of a system of proof which does not prevail in theory or as a whole; and the reason why it has not disappeared may be found in the rarity with which contempts occur." And again the court says: "The question was left open in *In re Bavin,* 131 U. S., 267, with a visible leaning toward the conclusion to which we come, and that conclusion has been adopted by state courts in decisions entitled to respect. *Huntingdon* v. *McMahon,* 48 Conn., 174, 200, 201; *State* v. *Matthews,* 37 N. H., 450-455; *Bates case,* 55 N. H., 325, 327; *In re Snyder,* 103 N. Y., 178, 181; *Crow* v. *State,* 24 Tex., 12; *Mason* v. *Harper's Ferry Bridge Co.,* 16 W. Va., 864, 875; *Wartman* v. *Wartman,* Fed. case 17,210; *Cartwright's case,* 114 Mass., 230; *Eilenbecker* v. *District Court,* 134 E. S., 31. We see no reason for emasculating the power and making it so nearly futile as it would be if it were construed to mean that all contemnors willing to run the slight risk of a conviction for perjury can escape."

The court having tried the parties and adjudged them guilty of contempt on the facts, we do not feel warranted in disturbing its judgment.

*Affirmed.*