STATE OF FLORIDA, ex rel., NATHAN GREBSTEIN, *Petitioner*, v. M. P. LEHMAN, Sheriff of Dade County, State of Florida, *Respondent*.

En Banc.

Opinion filed June 9, 1930.

474

*Rosenhouse & Rosenhouse,* for Petitioner;

*Fred H. Davis,* Atty. Gen. and *Roy Campbell,* Assistant, for Respondent.

BUFORD, J.—Writ of habeas corpus was issued upon the petition of Grebstein and the sheriff has filed his return. The return shows that the petitioner is held under a judgment of the Honorable Paul D. Barns, Circuit Judge, wherein Grebstein is adjudged in contempt of court in the following language:

"WHEREAS, Nathan Grebstein, as the agent of an alleged and admitted, unnamed and unknown, principal, has approached and communicated to the undersigned judge of this, the above styled court, an offer or gift of Five Thousand Dollars, or more if same be deemed insufficient by the undersigned judge, in consideration that the undersigned judge would decide according to law a certain case then pending before the undersigned judge against one Alphonse Capone, and

"WHEREAS, it is apparent to this court that such an act committed in the form and manner and the circumstances as same was committed, and the communication of same to the court in such manner and form of an offer of a gift of such sum even for such named lawful act and sworn duty on behalf of this court, i. e., of deciding a cause according to law,

tends to disconcert, discompose and embarrass the said judge in the exercise of the judicial functions of his office, and does in fact disconcert, discompose and embarrass the said judge in the administration of justice by said court, IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the said Nathan Grebstein be and he is hereby adjudged to be in contempt of said court.

"DONE AND ORDERED at Miami, Florida, this 9th day of May, A. D., 1930."

And a commitment entered on such judgment, as follows:

"WHEREAS, Nathan Grebstein, as the agent of an alleged and admitted unnamed and unknown, principal, has approached and communicated to the undersigned judge of this court, an offer of a gift of Five Thousand Dollars, or more if same be deemed insufficient by the undersigned judge, in consideration that the undersigned judge would decide according to law a certain case then pending before the undersigned judge against one Alphonse Capone, and

"WHEREAS, it is apparent to this court that such an offer of a gift of such sum even for such named lawful act and sworn duty on behalf of this court, i. e., of deciding a cause according to law, tends to disconcert, discompose and embarrass the said judge in the exercise of his judicial functions of his office, and does in fact, disconcert, discompose and embarrass the said judge in the administration of justice by said court,

"NOW THEREFORE, this is to command M. P. Lehman as Sheriff of Dade County, Florida, or any

deputy of said Sheriff, to take into custody the said Nathan Grebstein and that he be committed to the county jail of Dade County, Florida, until further order of this court.

"DONE AND ORDERED at Miami, Florida, this 9th day of May, A. D. 1930."

Grebstein filed an answer to the return. The answer is sworn to and constitutes the only evidence before this Court as to details of what transpired. The allegations of the answer were as follows:

"1. That petitioner, as well as numerous other persons in Dade County, Florida, several days prior to the entry of the judgment and commitment of contempt by Honorable Paul D. Barns, one of the Circuit Judges of the Eleventh Judicial Circuit of Florida, in and for Dade County, attended a hearing had before said Court in a civil cause on the chancery side thereof, wherein one Alphonse Capone was one of the defendants; that the court room was crowded and your petitioner being unable to find a seat in that portion of the court room set apart for the spectators inquired of the court if he could be allowed to occupy one of the empty seats within the enclosure set apart for attorneys and witnesses; that the said Honorable Paul D. Barns did grant him permission to occupy a chair within the enclosure as aforesaid, and he was a spectator to the proceedings in such manner.

"2. That after the adjournment of said court and the termination of the hearing this petitioner was approached by an individual unknown to him, informing him that from the apparent conduct of the court in allowing him to sit within the enclosure provided

for attorneys and court attaches he must be on friendly terms with the Court, and then and there stated to your petitioner that he has authority to offer the court a gift of Five Thousand ($5,000.00) Dollars or more if said Court deemed it insufficient in consideration, that the undersigned judge would decide according to law a certain cause therein pending against one Alphonse Capone.

"3. Petitioner further says that inasmuch as the court gave him the courtesy of a seat within the enclosure that he felt in duty bound to acquaint the court of the matters and things alleged in the above paragraphs, and he thereupon went to the chambers of the said circuit judge, Honorable Paul D. Barns, in the circuit court rooms in the court house in Miami, Florida, and thereupon, in the presence of only the said judge and himself, communicated to the said court and judge that an unknown man, whom he described to the court, approached him in the manner set forth herein.

"4. The petitioner says that it was never his intention to cast reflection on the court nor to bribe the court or to embarrass, disconcert or discompose the court in the exercise of his judicial functions of his office, and further says that said communication was not intended by him to impede, embarrass or obstruct the court in the administration of any cause then pending, and petitioner says that if the communication as set forth therein did tend to disconcert, discompose or embarrass the said judge in the exercise of his judicial functions of his office, he is truly sorry; that he is willing to make any apology necessary or public statement; that if he had any idea that the communication to the court aforesaid would tend to embarrass, discompose or dis-

concert the said judge he would have refrained from doing so.

"5. Petitioner would further show unto the court that he had the misfortune to sustain an accident wherein his head was injured six years or so ago, and that because of the effects of this injury same sometimes prevents him from exercising his God given faculties to the best advantage, all of which the court as well as the respondent now have knowledge of.

"6. Petitioner further shows unto the court that at the time of his communication with the said circuit judge he had no idea that he had offended the court, and the court advised him to come back and see him; that the first he knew of the court taking offense of his communication was the service of the contempt commitment upon him by the sheriff of Dade County, Florida, and this petitioner shows unto the court that he has been given no opportunity to appear before said court and file an affidavit of denial as set forth herein for the purpose of purging himself of the alleged contempt."

There was no rule to show cause issued before the judgment of contempt was entered and, therefore, there is no record before this Court as to what transpired and occurred between the petitioner and the circuit judge, nor as to the manner in which such things occurred.

The facts appear to be that the petitioner was in the court room attending a session of the court over which Judge Barns presided; that he was allowed to occupy a seat inside the rail; that when an adjournment or recess occurred an unknown man approached the petitioner and asked him to advise Judge Barns that parties were willing to give him $5,000.00, or more if he did not consider that

sum sufficient, to decide a certain case, in which one Alphonse Capone was involved, according to law; that the petitioner proceeded at once to the judge's chambers and related to the judge what had been communicated to the petitioner in the court room. There is nothing in the record to indicate whether the stranger who communicated the proposition was a friend or an enemy of Capone. Neither is there anything to indicate that Capone had anything to do with the matter. There is nothing in the record to indicate that petitioner had any interest whatever in the Capone case. There is nothing to indicate that the prisoner possessed means directly or indirectly to carry out the proposition made to the judge. In fact, we are much impressed with the idea that the petitioner was more of a fool than a knave and that very probably he meant no offense, and did not realize that any offense had been given until he was arrested under the commitment, by virtue of which he is now in prison.

We hold that the conduct of the petitioner constituted a technical contempt of court, regardless of the motive of the petitioner, and that the judge of the circuit court was justified in holding the petitioner in contempt of court.

The record shows that the petitioner has been in jail since the 9th day of May and this is the 9th day of June, which makes 31 days that he has been incarcerated.

It will be observed that the order of commitment in this case is, "That he be committed to the county jail of Dade County until further order of this court." This was not a valid commitment. The authorities are not uniform in this holding, but the weight of authority appears to support this conclusion. The majority rule appears to be that the order of commitment in contempt cases should name a definite term of imprisonment in all cases where the imprisonment is inflicted as a punishment for the contempt

and not as a means to compel the party to do some act required of him by the court. Rapalje on Contempt, 179; 13 C. J. 85-86; People v. Pirfenbrink, 96 Ill. 68; Whitman v. State, 36 Ind. 196; Matter v. Hammel, 9 R. I. 248; Yates v. People, 6 Johns (N. Y.) 337; Kahlbon v. Peo. 101, Ill. A 567; Clark v. Parker, 70 Ill. A 233; Perry v. Pernet, 165 Ind. 67, 74 N. E. R. 609; State v. Miles, 44 Iowa 580; State v. Camden, 5 N. J. (L. J.) 187; Ex Parte Kearby, 35 Texas C. R. 531; 34 S. W. R. 635; In re Leech, 51 Vermont 630.

Aside from this general rule applicable to imprisonment for contempt, we must also take into consideration the provisions of our Constitution. Section 8 of our Declaration of Rights prohibits the imposing of "indefinite imprisonment" and, therefore, the order of commitment in this case is in conflict with the organic law.

As the warrant for the petitioner's detention is invalid, because it is indefinite as to duration of imprisonment, and because the petitioner has been adequately punished by the imprisonment already suffered for his conduct which resulted in the judgment against him for contempt of court, he should be now discharged and it is so ordered.

Petitioner discharged.

WHITFIELD AND ELLIS, J. J., concur.

TERRELL, C. J., AND BROWN, J., concur in the conclusion.