CHARLES H. WILSON, *Petitioner*, vs. R. T. JOUGHIN, Sheriff of Hillsborough County, *Respondent*.

Case No. 2.

141 So. 182.

En Banc.

Opinion filed April 26, 1932.

Petition for rehearing denied July 8, 1932.

*Dickenson & Lake,* for Petitioner;
*Charles F. Blake,* for Respondent.

WHITFIELD, J.—The facts are stated in the opinion by the Chief Justice filed herein. In Ex Parte Earman, 85 Fla. 297, 95 So. 755, 31 A. L. R. 1226, the contempt charged was language used in a letter written to a circuit judge by a judge of the municipal court. The letter was not clearly contemptuous in its import and it expressly stated it was written for "information, and as a communication from a judge of an inferior court to the judge of an appellate court" as "a statement of facts." It was held that under the rules of the common law the writer of the letter could not be adjudged in contempt, where he expressly denied under oath that he wrote the letter with intent to reflect on the circuit judge, the language complained of not being plainly contemptuous. See also Ex Parte Biggers, 85 Fla. 323, 95 So. 763; 6 R. C. L. 525; 13 C. J. 75.

Where the act charged clearly constitutes contempt, a denial under oath of a contemptuous intent in committing the act, does not require a discharge. In such cases the question is not whether contempt was intended, but whether the conduct constituted contempt. See United States v. Shipp, 203 U. S. 563, 51 L. Ed. 319, 27 Sup. Ct. 165, 8 A. & E. Ann. Cas., 265. Emery v. State, 78 Neb. 547, 111 N. W. 374, 9 L. R. A. (N. S.) 1124; O'Flinn v. State, 89 Miss. 850, 43 So. 82, 9 L. R. A. (N. S.) 1119; Ex Parte Bankhead, 200 Ala. 102, 75 So. 478; Prine v. State, 143 Miss. 231, 108 So. 716; Pierce v. U. S., 37 App. Cases, D. C. 582; Carson v. Ennis, 146 Ga. 726, 92 S. E. 281, L. R. A. 1917E 650; In Re Fountain, 182 N. C. 49, 108 S. E. 342.

"As a general rule *habeas corpus* does not lie to

correct mere irregularities of procedure where there is jurisdiction, and in order to sustain the writ there must be illegality or want of jurisdiction. *Ex Parte* Pitts, 35 Fla. 149, 17 South. Rep. 96; *Ex Parte* Prince, 27 Fla. 196, 9 South. Rep. 659; Ex Parte Bowen, 25 Fla. 214, 6 South. Rep. 64. When a person has been taken into custody under an order of a court exercising proper jurisdiction, a *habeas corpus* to discharge the person so taken involves a collateral attack on the order under which he is held, and well established rules forbid an investigation into matters of mere irregularity in procedure. But illegality in matter of law or want of jurisdiction may be inquired into and the decision of the lower court as to such matter, is not conclusive. The following language taken from People *ex rel.* Hackley vs. Kelly, 24 N. Y. 74, a contempt proceeding, is expressive of our views on the subject, *viz:* 'But this rule is of course subject to the qualification, that the conduct charged as constituting the contempt must be such that some degree of delinquency or misbehavior can be predicated of it; for if the act be plainly indifferent or meritorious, or if it be only the assertion of the undoubted right of the party, it will not become a criminal contempt by being adjudged to be so. The question whether the alleged offender really committed the act charged, will be conclusively determined by the order or judgment of the court; and so with equivocal acts, which may be culpable or innocent according to the circumstances; but where the act is necessarily innocent or justifiable, it would be preposterous to hold it a cause of imprisonment. Hence, if the refusal of Mr. Hackley, the relator, to answer the question propounded to him, was only an assertion of a right secured to every person by the Constitution, it was illegal to commit him for contempt.' It cannot certainly be true that the decision of an inferior court adjudging a matter to be a contempt precludes all investigation as to the legality or proper authority of the court to make such order; and on the other hand, it must not be forgotten that in such matters when the court is acting within the sphere of its legitimate powers the appellate tribunal will not undertake to review the correct-

ness of conclusions as to matters of fact or questions of mere procedure. In Re Dill, 32 Kansas, 668.'' Ex Parte Ed. Senior, Jr., Habeas Corpus, 37 Fla. 1, 14, 14 So. 652.

"When the order or judgment of a court of general jurisdiction committing the petitioner to jail for contempt is collaterally attacked by *habeas corpus*, every intendment will be indulged in support of validity of such order or judgment unless the contrary affirmatively appears. It is generally held in such cases that the recitals in the commitment record are conclusive of the facts recited, and a statement filed by the judge as to matters occurring before him is usually regarded as importing absolute verity.'' State ex rel. Grebstein v. Lehman, 100 Fla. 473, 482, 129 So. 818.

The overt conduct charged is not equivocal and it constitutes contempt, therefore the commitment for contempt is conclusive. See Ex Parte Savin, 131 U. S. 267, 33 L. Ed. 150, 9 Sup. Ct. 699; Sinclair v. U. S., 279 U. S. 749, 73 L. Ed. 938, 49 Sup. Ct. 471, 63 A. L. R. 1258; 25 App. D. C. 404; Baumgartner v. Joughin, 105 Fla. 335, 141 So. 185; and Wilson v. Joughin, No. 3, 105 Fla. 353, 141 So. 178; filed this day.

Petitioner remanded.

ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.

BUFORD, C.J., dissents.

BUFORD, C.J. (dissenting).—This is an original proceeding in habeas corpus before this Court. The petitioner, Charles Wilson was adjudged in contempt of court by the Honorable L. L. Parks, one of the Judges of the Circuit Court of the Thirteenth Judicial Circuit of Florida, in and for Hillsborough County. Rule nisi issued by Judge Parks on the 12th day of March, 1932, based upon testimony of certain witnesses taken before the court, which witnesses were named in the Rule. The Rule charged as follows:

"That from said testimony of the foregoing witnesses it appears that you, the said Charles H. Wilson,

did on the morning of Sunday, February 28th, A. D. 1932, approach the said T. B. Crosson, after the said T. B. Crosson had been duly served with summons to appear as a juror, knowing that he was a juror drawn to serve in this court on the above entitled cause, and knowing that the said above entitled cause of the State of Florida v. Victor Palmer, et als., was to be called for trial on the following day, and attempted to corrupt the said juror, to-wit: T. B. Crosson, by influencing him to bring in a particular verdict in said cause and with the intent to bias the opinion and influence the decision of such juror relating to' the cause pending in the court, and thereby corrupt, hinder and obstruct the administration of justice in the Court aforesaid, in contempt of this Court and the Judges serving therein.''

Transcript of the testimony upon which the Rule was based was attached to and made a part of the Rule. The transaction between the witness and Wilson, according to the testimony of the witness, which is the only testimony in this record, was:

''Q. Do you know what make car it was? A. No sir.

Q. And those people drove up? A. Yes sir.

Q. A large or small car? A. It was a big car, a large car.

Q. A sedan? A. I couldn't say, it was a large car.

Q. Do you know what color? A. No, sir.

Q. Did they get out of the car and come to see you? A. I was standing up outside of the house and it must have been the young man came and spoke to me and said 'There is a man up there wants to see you,' so I walked up to the car and he says, 'Is this Mr. Crosson?' and I says, 'Yes, this is Mr. Crosson.' And he commenced. This man got out of the car and said, 'I want to speak a word to you.' And 'he walked off to one side and said, 'I want you fellows—' or men, I forget just how he said that, anyhow he says 'I want you men' or boys, I don't know just how, but says, 'I want you all if you can not to electrocute this boy' but he didn't say what boy. He says, 'If you can, I would rather you would give him life time than to execute him.'

When he started about this matter I just spoke to him and said, 'I am a juror,' and didn't want him to be telling me nothing, if he wanted me to wishe-washe I didn't want him to do that. I said, 'I am a juror' and he said 'I understand. I am not doing this thing to incriminate myself, I am just asking you if you can not to electrocute him if you can.' And said 'It would be best to give him life and not electrocute him.'

Q. And then what happened? What did you say?

A. I told him that I was a man that tried to give justice to give the man all of the doubts that there was about it.''

The respondent filed his answer under oath containing the following allegations:

''This respondent denies emphatically any intention on his part to corrupt in any manner whatsoever, the said T. B. Crosson, as set out in Rule Nisi.

2. This respondent further answering said Rule Nisi denies each and every material allegation contained therein, and specifically denies that he had any intention of influencing in any manner, or attempting to influence in any manner, the decision of the said T. B. Crosson to bring in any particular verdict in the case of State of Florida vs. Victor Palmer et al., and thereby corrupt, hinder and obstruct the administration of justice in the court aforesaid, in contempt of the court and the jurors serving therein.

3. This respondent denies that he knew that the said T. B. Crosson was a juror drawn to serve in the case of State of Florida vs. Victor Palmer, et al., as set out in the Rule to Show Cause.

4. This respondent further denies that he knew the case of the State of Florida vs. Victor Palmer et al. was to be called for trial on the following day, to-wit: February 29th, 1932, as set out in the Rule Nisi.

5. This respondent further answering said Rule to Show Cause tenders herewith his apology to the Court, if there was anything said by him in any conversation with the said T. B. Crosson which was construed by the said T. B. Crosson to mean that this respondent was attempting in any manner to influence him to bring

in a particular verdict in the case of the State of Florida vs. Victor Palmer et al., as set out in said Rule to Show Cause.

6. This respondent further answering said Rule to Show Cause denies emphatically that he ever used the language charged to have been used by him by the said T. B. Crosson, as shown by Exhibit 'A' attached to the Rule to Show Cause.

7. This respondent further answering said Rule to Show Cause, says that the acts charged to have been committed by this respondent are so vaguely and indefinitely set out as not to apprise this defendant of any wrongful act done by him at the time and place, as set out in the said Rule to Show Cause.

8. This respondent further answering says that in the conversation which he had with the said T. B. Crosson at the time and place set out in said Rule to Show Cause, that he was not aware that the said T. B. Crosson was a juror drawn to serve in any court, either the Circuit Court or any other Court, and that as soon as the said T. B. Crosson informed him that he was a juror, the respondent ceased talking to the said T. B. Crosson, and had no further conversation with the said T. B. Crosson.''

In Ex Parte Earman, 85 Fla. 297, 95 Sou. 755, this Court said:

''In a prosecution for a criminal contempt whether direct or indirect or constructive, the purpose is not to avenge a personal affront, but to appropriately punish for an assault or an aspersion upon the authority and dignity of the court or judge. The proceedings may be summary if predicated upon a sufficient charge and due course of law is observed and constitutional rights are not violated in the hearing, and the imposed penalty is appropriate to vindicate the authority and dignity of the court or judge and is not excessive or unlawful in its nature or extent. When a court has adjudged an imprisonment for contempt of court, a superior court may in appropriate habeas corpus proceedings, test the validity of the imprisonment by determining whether the court that imposed the sentence

of imprisonment had jurisdiction of the person, had authority to render such a sentence and had proper predicate for its sentence in the charge and the proofs or admission duly adduced before the sentence. See Ex Parte Turner, 73 Fla. 360, 74 South. Rep. 314.

If a person is illegally adjudged and imprisoned for contempt of court and the penalty imposed does not violate fundamental rights, he will not be discharged from such imprisonment on habeas corpus but if the matters complained of in the contempt proceedings do not in law constitute contempt of court, an adjudication that they do constitute contempt does not make it contempt, and relief from imprisonment for matters not amounting to contempt may be had by habeas corpus. Ex parte Senior, 37 Fla. 1, 19 South. Rep. 652.

The power of the court in habeas corpus proceedings to determine the validity of an imprisonment for contempt of court is not to test divergent contentions as to the weight of the evidence adduced in proceedings to punish as for a criminal contempt of court, when the hearing of conflicting evidence is appropriate, but the function of the court in habeas corpus is simply to consider the legal question whether the evidentiary facts found by the court in adjudging the contempt, had any reasonable tendency to sustain the action taken based upon the finding by the court. The situation is controlled by the reasonable tendencies of the acts done and not by extreme or strained assumptions on the subject. The criterion is not the influence the conduct or acts complained of may have had upon the mind of the particular judge, but the true test is the reasonable tendency of the conduct or the acts done to improperly influence or to embarrass or hamper the judicial action of a court. Having regard for the powers of the court in contempt proceedings, as well as to the protection of society and to the honest and fair administration of justice and to the evils that flow from embarrassing or obstructing judicial processes, the contempt for which summary punishment may be imposed accrues alone from a reasonable tendency of the acts complained of to degrade the court or to embarrass or obstruct judicial action, without reference to the consideration of how

far the acts may have had improper influence in a particular case. Toledo Newspaper Co. v. United States, 347 U. S. 402, 38 Sup. Ct. Rep. 560.''

In Ex parte Biggers, 85 Fla. 322, 95 Sou. 763, this Court said:

"In equity after the party in contempt has answered the interrogatories, such his answer may be contradicted and disproved by affidavits of the adverse party; whereas, in the courts of law the admission of the party to purge himself by oath is more favorable to his liberty, though perhaps not less dangerous to his conscience; for, if he clears himself by his answers, the complaint is totally dismissed. This method of examining the delinquent himself upon oath, with regard to the contempt alleged, is at least of as high antiquity, and by long and immemorial usage is now become the law of the land.' 4 Lewis' Blackstone Com., p. 286 et seq., and Notes; Appeal of Verdon, 89 N. J. L. 16, 97 Atl. Rep. 783; In re Gonzalez, 88 N. J. L. 536, 97 Atl. Rep. 953.

In contempt proceedings at common law the general rule is that if the matters complained of were not perpetrated in the presence of the court or judge or so near the court or judge as to impede or embarrass judicial procedure, the rule issued to the accused to show cause why he should not be punished for contempt, should be predicated upon affidavits of those who have personal knowledge of the facts alleged as the contempt. If the charge is not so predicated the rule should be discharged or quashed upon appropriate motion. See 13 C. J. 64, et seq.

If the charges duly made are admitted to be true and they clearly constitute contempt whether so intended or not, appropriate punishment follows. If the matters charged and admitted to be true are ambiguous or do not clearly constitute contempt, and an intent to offend is duly denied under oath, a discharge from custody follows. See In re Chadwick, 109 Mich. 588, 67 N. W. Rep. 1071.''

The record shows that the language and conduct of the respondent in the court below, the petitioner here, as attributed to him by the witness before the Circuit

Judge, was ambiguous and, therefore, his denial both of the act and language specifically attributed to him and the further denial upon his part of any purpose or intent to unduly or unlawfully influence the proposed juror, entitle him to discharge under the authority of the opinion and judgment in the case of Ex Parte Earman, supra, and the opinion and judgment in the case of Ex Parte Biggers, supra, and cases there cited.

The petitioner I think should, therefore, be discharged from custody insofar as this proceeding is concerned.