141 So.2d 615 (1962)
ROY J. NEERING, APPELLANT,
v.
STATE OF FLORIDA, APPELLEE.
No. C-441.
District Court of Appeal of Florida, First District.
May 17, 1962.
Rehearing Denied June 14, 1962.
Thomas J. Carroll and Luke G. Galant, Jacksonville, for appellant.
Richard W. Ervin, Atty. Gen., and James G. Mahorner, Asst. Atty. Gen., for appellee.
CARROLL, DONALD K., Chief Judge.
The defendant in a contempt proceeding has appealed from a judgment of contempt entered by the Circuit Court for Duval County, imposing a sentence of one year confinement in the county jail.
The essential facts disclosed in the record on appeal are as follows:
One Norman J. Benoit was served with a jury summons requiring him to appear in Circuit Court on May 8, 1961.
The defendant was in his attorney's office on certain business when another lawyer called him in his office to see if the defendant knew anybody on a jury list. He told the lawyer that he knew Benoit, who he thought "would make a fair and impartrial witness for anybody." The lawyer told the defendant he had a case against Winn-Dixie, representing a Mrs. Brendel, who had broken her hip.
Both the defendant and Benoit operated beauty shops. On May 3, 1961, the defendant telephoned Benoit's shop and asked that the latter return the call. At about 6 P.M. Benoit returned the call while a lady who was employed as a legal secretary by, and was a stockholder in, Winn-Dixie Stores, Inc., was in the defendant's chair for a beauty treatment. This lady testified that she heard the defendant say to Benoit: "The reason I called you * * * is that I want you to do me a special favor. I have an attorney friend * * * who has *616 a case coming up Tuesday. It's Brendel v. Winn-Dixie. You are on the jury list and there are a lot of insurance people and other undesirables that we don't like. I can't tell you anything about the case, but would you be averse to giving the old gal a little something for her pain and suffering, for her broken hip and leg? * * * That's fine." The defendant admitted this as the substance of his telephone conversation with Benoit, except that he claimed he said, "If the facts warrant it, would you be averse to giving the old gal something for her pain and suffering?"
The defendant further testified that he had not offered any inducement to Benoit and that his reason for the call was to relieve his "mental aggravation" from his conversation with the lawyer and wanted to put his own mind at ease after assuring the lawyer that Benoit would be a "fair juror."
Whether the defendant was attempting to influence, or only to ascertain, the attitude of the prospective juror, the defendant's conduct appears highly reprehensible to a lawyer or judge who is keenly conscious of the vital importance in the administration of justice of the entitlement of every litigant to a fair and impartial jury, especially in our court system in which jurors are often the final arbiters of the facts. Nevertheless, while we do not condone such conduct, the average layman is probably unaware of this concept and might easily believe that there is nothing wrong in contacting the prospective juror as the defendant did. Here the defendant had no interest in the outcome of the mentioned litigation. The evidence indicates that his primary purpose was to be sure that he had not misled the lawyer in saying he thought Benoit would make a "fair juror." Under these circumstances, we feel that the sentence of imprisonment in the county jail for a period of one year is excessive and should not be allowed to stand.
The power of an appellate court in this state to review sentences which are within the limits prescribed by law is very restricted, but there still remains an area of appellate review of such sentences.
The rule in Florida as to the review of judgments of contempt is set forth in the case of State ex rel. Grebstein v. Lehman, 100 Fla. 481, 129 So. 818, modifying 100 Fla. 473, 128 So. 811 (1930), in which our Supreme Court said:
"While this language must be construed in the light of the doctrine, which has also been recognized by this court, that no department of the government is, under our constitutional system, vested with unlimited and autocratic power, yet it correctly defines the attitude which this court has followed in liberally sustaining the nisi prius courts in their full constitutional power to compel obedience to their lawful orders and decrees and to enforce that salutary respect for the courts as an institution of government without which respect for law itself cannot be maintained. But even the power of the courts to punish for contempt is limited by the Bill of Rights, and not even a court can impose `indefinite' or `cruel and unusual' punishments. See section 8 of the Declaration of Rights. However, it is quite likely that the indefinite imprisonment imposed in this case was due to mere inadvertence and that the court below would, in keeping with its past record of justice and moderation, have terminated the punishment imposed within a reasonable time had not this writ been sued out.
"Ordinarily an appeal does not lie from an order of a court of general jurisdiction imposing punishment for contempt of court. Caro v. Maxwell, 20 Fla. 17; Fla. Cent. & P.R. Co. v. Williams, 45 Fla. 295, 33 So. 991; Miller v. Miller, 91 Fla. 82, 107 So. 251. As at common law every court of record was the exclusive judge of contempt committed against its authority and dignity, the judgment of a *617 court of competent jurisdiction inflicting punishment on the contemner was not, as a general rule, reviewable. 13 C.J. 97; 7 Am. & Eng. Encyc. of Law, 33."
The problem arising from the conflict between two vital considerations  the need to preserve the integrity of the court system and the ideal of tempering justice with mercy when an offense is unwittingly committed  is illustrated in the case of Geary v. State, 139 So.2d 891, decided by the District Court of Appeal, Third District of Florida, opinion filed April 10, 1962. In that case the defendant was found guilty of a charge of criminal contempt for discussing a cause in which he was a juror during the time that the court was in recess and against the admonition of the court. The trial court imposed a sentence of six months in the county jail. The District Court of Appeal said:
"It has been held that the power to punish for contempt should be cautiously and sparingly exercised. Seaboard Air Line Ry. Co. v. Tampa Southern R. Co., 101 Fla. 468, 134 So. 529; Demetree v. State, ex rel. Marsh, Fla. 1956, 89 So.2d 498. Yet it is natural and right that the court should be jealous of the integrity of the judicial process since there can be no surer way to harm our system of government than to have sown the seeds of suspicion and distrust for the ordinary processes of the law. While it is not contended that the sentence is illegal, appellant's third point is in the nature of a petition for modification of the sentence and might more appropriately be directed to the trial judge. We will not disturb the sentence."
In the instant case, however, we have reached a contrary conclusion because of the greater severity of the sentence here and the fact that there is no indication in the record that the defendant fully appreciated the possible relation of his conduct to the administration of justice.
The judgment of contempt is reversed as to the sentence imposed, and the cause is remanded for the imposition of a new sentence not to exceed six months in the county jail.
Reversed and remanded with directions.
WIGGINTON and RAWLS, JJ., concur.