### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

### EASTERN DIVISION.

## KNOXVILLE, SEPTEMBER TERM, 1908.

---

### B. F. COLEMAN *v.* STATE.

#### (*Knoxville.* September Term, 1908.)

1. **CONTEMPT OF COURT.** Sworn answer of defendant was conclusive at common law, but not in chancery, when.

   In a contempt case at common law, the sworn answer of the defendant charged with contempt of court, denying the contempt and making such statement as will free him from the imputed contempt, was conclusive and entitled him to his discharge; but in chancery the truth may be inquired into and ascertained by the court upon interrogatories and the answer thereto. (*Post,* p. 7.)

   Cases cited and approved: Rutherford v. Metcalf, 5 Hay., 58; Underwood's Case, 2 Humph., 46; note to Warner v. Martin, 4 Am. & Eng. Ann. Cas., 183, 184.

2. **SAME.** Common law rule of the conclusiveness of defendant's answer has fallen into desuetude, and the matter is subject to proof.

   The common law rule that the sworn denial of the defendant charged with contempt of court and making such statement as will free him from the imputed contempt was conclusive

Coleman v. State.

has fallen into desuetude in this State, and evidence is admissible to controvert the statements therein, and the whole matter is subject to inquiry and ascertainment by the court. (*Post*, pp. 7-9.)

Cases cited and approved: Brooks v. Fleming, 6 Bax., 331-333; Harwell v. State, 10 Lea, 544; Sinnott v. State, 11 Lea, 281; Scott v. State, 109 Tenn., 390; Rickets v. State, 111 Tenn., 380; United States v. Shipp, 203 U. S., 565, and citations; O'Flynn v. State, 89 Miss., 850; Emery v. State (Neb.), 111 N. W., 374, 9 L. R. A. (N. S.), 1124.

3. **SAME.** Tampering with summoned jurors before they are accepted is a contempt of court.

Under our statute making it a contempt of court to abuse or unlawfully interfere with the process or proceedings of the court, one charged with an offense, trying to influence in his behalf persons summoned for jurors before their nonacceptance on the jury is guilty of contempt of court. (*Post, pp.* 9-12.)

Code cited and construed: Sec. 5918 (S.); sec. 4881 (M. & V.); sec. 4106 (T. & S. and 1858).

4. **SAME.** Judgment too general and meager may be corrected in supreme court so as to set out the facts sufficiently.

Where the judgment in a prosecution for contempt of court is too general and meager in not sufficiently setting out the grounds on which the accused was found guilty, it may be corrected in the supreme court so as to set out the facts sufficiently. (*Post, p.* 12.)

Cases cited and approved: Cronan v. State, 113 Tenn., 539, 543, and citations; Cowan v. State, 117 Tenn., 247, 249.

---

FROM HAMILTON.

---

Appeal from the Criminal Court of Hamilton County. —S. D. McReynolds, Judge.

CLIFT & COOKE, LATIMORE & WHITAKER, and SAM H. FORD, for Coleman.

ATTORNEY-GENERAL CATES and J. H. EARLY, for State.

MR. JUSTICE NEIL delivered the opinion of the Court.

The plaintiff in error was proceeded against in the criminal court of Hamilton county for contempt, was convicted in each of the three cases, fined $50, and sentenced to ten days' confinement in the county jail. From each of these judgments he has appealed to this court and assigned errors. The facts upon which the arrests were predicated were developed by three persons summoned as jurors, while they were being examined upon their *voir dire*.

One of the talesmen, Mr. Thatcher, testified that one Sam Hutchinson saw him as representative of the plaintiff in error, after he had been summoned, and said: "Frank Coleman wants you on his jury; didn't have 'nary' friend on the other jury"— and that he took Thatcher to be his friend.

Hutchinson testified that he had been sent by Coleman to interview Thatcher. He testified as follows: "Well, he [Coleman] wanted me to go and see Thatcher, and see whether he was his friend or his enemy. If he was his enemy, he didn't want him on his jury. If he was his friend, he wanted him on it."

Mr. Bandy, another talesman, testified that on the day before Coleman's case was tried the following occurred:

"We met Mr. Coleman. I spoke to him, and he asked me if I was on the jury. I replied that I was. We walked on down the street, and Mr. Coleman went with us. We went down to Seventh street, and Mr. Coleman suggested that we take a glass of beer. We took a glass of beer, and then we went down towards Market street. Coleman said to me: 'My case comes up tomorrow, and I would like to have you on my jury.' I said: 'I have known you twenty-six or twenty-seven years, and they won't have me.' He said: 'If Whitaker [the attorney-general] takes you, we will.' He remarked that I ought to be willing to help a man in a tight. I said I would rather not sit in the case. He said: 'You haven't formed any opinion in the case, have you?' And I said: 'No.' I don't remember just exactly how I expressed myself, but he remarked that he didn't want me to do anything wrong. Q. What did he say with reference to not letting the court find out how long he had known you? A. I believe he made the remark that I didn't have to tell that unless I was asked."

The third talesman, J. R. Wooden, testified that after he had been summoned on the jury Coleman had the following talk with him: "He said Martin was on the jury before. He said he was a pretty good friend of his. He said that he had known him so long that they wouldn't have him on his jury. . . . He said he would like to have me on his jury. He said he had known me a good bit." He further said that Coleman told him not to tell the judge how long he had known

him. He also told the juror that he had only one friend on the other list, and the attorney-general objected to him; that he then told the witness that he need not tell how long he had known him (plaintiff in error.)

These conversations had with the three talesmen were first disclosed by them when they were examined for service on the jury. They were not taken upon the jury, and of course were not members of it when plaintiff in error's case was tried.

Subsequently, when the present proceeding was begun against Coleman, the witnesses were examined and gave testimony in the three cases as above indicated.

Before this testimony was offered, the plaintiff in error filed a sworn answer, or return, to the attachment for contempt, in which, after denying guilt in general terms, he proceeded with the following special denial:

"He denies that he in any way undertook to, or tried in any manner to, influence any one of said persons summoned as jurors from attending said court, or obeying the summons to attend, or that he tried to influence them to attend, or that he in any other way knowingly, intentionally, or willfully interfered with the process or proceedings of the court.

"He denies that he willfully, unlawfully, or corruptly conversed with, or tampered with, said parties, or either of them, as jurors, or said anything to them, or either of them, for the purpose of influencing their verdict, or that of either of them, in the trial of his case, or authorized or procured any one else to do so in his behalf.

Coleman v. State.

"He denies that he discussed the facts or circumstances of his case with either of said jurors, or had another to do it for him, or that he detailed the circumstances which brought about the indictment and prosecution against him. When the fact was casually mentioned that they were jurors, or might be jurors, he expressed himself as being pleased, doing so because they knew him, and he knew them to be fair and just men, and was willing to trust his case in their hands. He was confident of his innocence, and always felt and believed that he would finally be acquitted of the charge against him, and he was acquitted, and neither of the said parties was on the jury trying his case; and to secure his acquittal he never in any wise attempted to influence any prospective jurors by corrupt inducements, or by any other means. He positively denies that he said anything to them, or any one of them, as to the character of the verdict he desired or expected, or that he had any idea that any casual remark made could or would influence the action of any juror, or affect the proceedings of the court in any way. If the simple statement that he would like for them to be on the jury was wrong, it was an unintentional wrong. He did not know or think that it was wrong, and had no thought that it could affect in any wise any verdict that might be obtained in court, and that he did not say it with the intention that it should have that effect.

"He avers that he has the highest respect for this honorable court, and its process and proceedings, and

Coleman v. State.

would not intentionally, knowingly, or willfully do anything to interfere therewith."

In the court below, when the above testimony was offered, the plaintiff in error objected to the introduction of evidence on the ground that by the above-mentioned sworn answer he had purged himself of the contempt, if he had been guilty of any, and that witnesses could not be introduced to inquire into the matter. It is now assigned for reversal that the circuit judge committed error in declining to sustain this objection and in subsequently hearing the evidence above set forth.

It is stated in *Underwood's Case,* 2 Humph., 46, that in a case at common law the defendant will be discharged if by his answer to interrogatories filed he make such a statement as will free him from imputed contempt; but in cases in chancery the truth of defendant's statement in reply to interrogatories filed may be controverted on the other side, and the whole matter be inquired into and ascertained by the court.

The case referred to was in chancery; likewise the case of *Rutherford* v. *Metcalf,* 5 Hayw., 58, upon the same subject. However, the rule at common law is correctly stated (and see note to *Warner* v. *Martin,* 4 Am. & Eng. Ann. Cas., 183, 184); still in this State the common-law rule has fallen into desuetude, as indicated by two recent cases. *Scott & Light* v. *State,* 109 Tenn., 390, 71 S. W., 824; *Ricketts* v. *State,* 111 Tenn., 380, 77 S. W., 1076; and other Tennessee cases referred to *infra.* The question was not discussed in any of these cases, but evidence was heard in all of them.

The same question arose recently in the supreme court of the United States, in the case of *U. S.* v. *Shipp,* 203 U. S., 565, 27 Sup. Ct., 165, 51 L. Ed., 319.

In the case referred to defendant filed a sworn answer denying the contempt, and it was insisted that this was conclusive. Responding to this suggestion the court said:

"On this occasion we shall not go into the history of the notion. It may be that it was an intrusion or perversion of the canon law, as is suggested by the propounding of interrogatories, and the very phrase 'purgation by oath' (*juramentum purgatorium*). If so, it is a fragment of a system of proof which does not prevail, in theory or as a whole; and the reason why it has not disappeared perhaps may be found in the rarity with which contempts occur. It may be that even now, if the sole question were the intent of an ambiguous act, the proposition would apply. But in this case it is a question of personal presence and overt acts. If the presence and the acts should be proved, there would be little room for the disavowal of the intent. And when the acts alleged consists in taking part in a murder, it cannot be admitted that a general denial and affidavit should dispose of the case. The outward facts are matters known to many, and they will be ascertained by testimony in the usual way. The question was left open in *Re Savin,* 131 U. S., 267, 9 Sup. Ct., 699, 33 L. Ed., 150, with a visible leaning towards the conclusion to which we come, and that conclusion has been adopted by State

Coleman v. State.

courts in decisions entitled to respect. *Huntington* v. *McMahon*, 48 Conn., 174, 200, 201; *State* v. *Matthews*, 37 N. H., 450, 455; *Bates' Case*, 55 N. H., 325, 327; *Re Snyder*, 103 N. Y., 178, 181, 8 N. E., 479; *Crow* v. *State*, 24 Tex., 12, 14; *State, ex rel. Mason*, v. *Harper's Ferry Bridge Co.*, 16 W. Va., 864, 873. See *Wartman* v. *Wartman*, Taney, 362, 370, Fed. Cas. No. 17210; *Cartwright's Case*, 114 Mass., 230; *Eilenbecker* v. *District Court*, 134 U. S., 31, 10 Sup. Ct., 424, 33 L. Ed., 801. Whether or not Revised Statutes, section 725 (U. S. Comp. St. 1901, p. 583), applies to this court, it embodies the law, so far as it goes. We see no reason for emasculating the power given by that section, and making it so nearly futile as it would be if it were construed to mean that all contemners willing to run the slight risk of a conviction for perjury can escape." To same effect, see the following cases: *O'Flynn* v. *State*, 89 Miss., 850, 43 South., 82, 9 L. R. A. (N. S.), 1119, 119 Am. St. Rep., 727; *Emery* v. *State* (Neb.), 111 N. W., 374, 9 L. R. A. (N. S.), 1124.

Our statute upon the subject of contempts is embodied in section 5918 of Shannon's Code as follows:

"The power of the several courts of this State to issue attachments and inflict punishments for contempts of court shall not be construed to extend to any except the following cases:

"(1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice.

"(2) The willful misbehavior of any of the officers of said courts in their official transactions.

"(3) The willful disobedience, or resistance, of any officer of the said courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule decree, or command of said courts.

"(4) Abuse of, or unlawful interference with, the process or proceedings of the court.

"(5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them.

"(6) Any other act or omission declared a contempt by law."

The sixth subsection has been declared not to add anything to the other five specifications. *Scott* v. *State,* 109 Tenn., 395, 71 S. W., 825.

The statute would be rendered ineffective if one accused of contempt could cut off all inquiry by filing an affidavit denying the contempt charged, or disclaiming any improper purpose.

The case of *Brooks* v. *Fleming·* was in chancery; but the language of the court upon the subject was not confined to the practice in that court, but was general, as follows: Referring to contempts out of the presence of the court it was said that they can only be brought to the knowledge of the court, and its action invoked, upon the testimony of others. "The charge must be made in such form as to give the party an opportunity to purge himself of the alleged contempt. Ordinarily it must be

made upon oath, to which the person accused by it has the right to answer. This answer presents an issue to be inquired into by the court, and to be determined upon its facts. The inquiry is in the nature of a criminal proceeding," etc. 6 Baxt., 331-333.

In *Sinnott* v. *State,* 11 Lea, 281, the party proceeded against for contempt was charged with having suggested to the sheriff that he should summon certain persons on the jury. The course of practice pursued in that case is thus stated by the court: "The attorney-general filed specifications in each case. The plaintiff in error moved to quash the specifications filed, which motion was overruled by the court; and, having filed his answer to such specifications, the court proceeded to hear the case, and, having heard the testimony, adjudged the defendant guilty as charged," etc.

In *Harwell* v. *State,* 10 Lea, 544, the plaintiff in error was under arrest, charged with interference with the grand jury. In that case the court heard the testimony of witnesses, but refused to hear the plaintiff in error himself testify as a witness, on the following grounds, as stated in the opinion: "In answer to the warrant, and by way of purging himself of contempt, he might have filed his affidavit upon return of the warrant; but, the proceeding being in the nature of a criminal prosecution, the defendant was not competent to testify as a witness in his own behalf, and there was no error in the refusal of the court to allow him to be examined as a witness." This was before our statute was passed which gave the

right to defendants in criminal prosecutions to testify in their own behalf.

The second point insisted upon is that the facts proven do not make out a case of contempt, because the parties approached were not members of the jury which tried the plaintiff in error. The argument is that the contempt in respect of tampering with jurors must fall under subsection 5 of the Code section above quoted. This is a mistaken view. The facts show a violation of subsection 4, being an unlawful interference with the process or proceedings of the court. *Sinnott* v. *State,* 11 Lea, 281; *Harwell* v. *State,* 10 Lea, 544.

It is next insisted that the judgments rendered against the plaintiff in error in the court below are void, because too general, not setting out fully the grounds on which the plaintiff in error was found guilty. We think the judgments are too meager; but they can be corrected here, so as to set out the facts sufficiently. *Cronan* v. *State,* 113 Tenn., 539, 543, 82 S. W., 477 and cases cited; *Cowan* v. *State,* 117 Tenn., 247, 249, 96 S. W., 973.

Upon the correction of the judgment in the manner indicated, the judgment of the court below will be affirmed.