E. BAUMGARTNER, *Petitioner*, vs. R. T. JOUGHIN, Sheriff of Hillsborough County, Florida, *Respondent*.

141 So. 185.

En Banc.

Opinion filed April 26, 1932.

Petition for rehearing denied July 8, 1932.

*Dickenson & Lake,* for Petitioner;
*Charles F. Blake,* for Respondent.

PER CURIAM.—In this case a majority of the Court are of the opinion that the petitioner should be remanded to custody under the commitment issued by Hon. L. L. Parks, Judge of the Circuit Court, holding the petitioner guilty of contempt of court for improperly approaching a prospective juror.

It appears from the record that certain jurors had been drawn and summoned for duty at a trial term of the Circuit Court for Hillsborough County; that one of the cases to be tried at such term was that of State of Florida v. Louis Leavine, for murder; that amongst those drawn and served for jury duty was a venireman, Frank McWayne, who thereafter appeared in Court in response to the summons; that prior to the juror's appearance in Court the petitioner approached the said Frank McWayne, knowing that he had been drawn to serve on the jury during the week commencing February 29, 1932, and knowing that the case of State of Florida versus Louis Leavine for murder would be called for trial during that time, said to him: "You have been drawn on the jury, I see . . . . . . . Would you be interested in a proposition, a pretty good proposition?;" that just prior to this that petitioner had come up to the prospective juror's store in an automobile to buy cigars and in connection with the conversation just quoted, had by way of beginning conversation, dropped

the remark that he knew Louis Leavine, who was to be tried for murder, but that Louis wasn't a bad boy but that it was his brother Wilbur who was the wild one.

The Circuit Judge, upon being apprised of the incident, cited petitioner for contempt. Subsequently after a hearing the Judge committed him to the County Jail for sixty days. The case is here upon habeas corpus seeking petitioner's discharge from that commitment.

Section 5439 C. G. L., 3575 R. G. S., provides that in habeas corpus cases:

> "When, on the return of the writ, the cause of detention shall appear to have been a contempt, plainly and specifically charged in the commitment by some court officer or body having authority to commit for the contempt so charged and for the time stated, it shall be the duty of the court or judge before whom the writ is returnable forthwith to remand the prisoner, if the time for detention for contempt has not expired."

In the instant case the return exhibits the following order of the Circuit Judge as the cause of petitioner's detention:

> "This cause coming on to be heard before this Court upon a Rule Nisi duly served upon the Respondent, E. Baumgartner, and he appearing in Court, in person, with his counsel, Paul Lake, Esq., and Chester Ferguson, Esq., and the respondent, together with his counsel being in court during a full hearing of this matter and during the entering and reading to the respondent of this judgment and finding of this Court, and the Court having heard the testimony in the matter and having read the answer or return filed by the respondent, and the Court having further offered to allow the respondent the privilege of cross-examining the witnesses adduced against him, and further allowed the respondent to introduce such testimony by witnesses as he might think proper, and respondent having failed to avail himself of either cross-examination of witnesses against him or pre-

senting witnesses to testify in his favor, and the Court being fully advised in the premises:

FINDS, ORDERS AND ADJUDGES that the allegations set forth in the Rule Nisi filed in this cause, and issued by this Court, have been proven and substantiated by the evidence.

It is further FOUND, ORDERED AND ADJUDGED that the said E. Baumgartner did, as set forth in the rule to show cause issued in this matter, attempt to corrupt a juror drawn to serve in this cause, to-wit: Frank McWayne, after the said juror had been served with a summons to serve herein, and with full knowledge of the fact that the said juror had been summoned to serve in this cause, by attempting to influence the decision of said juror and by inquiring of said Frank McWayne if the said McWayne would be interested in a proposition with reference to said trial of Louis Leavine for the murder of Joe B. Johnson, by reason of which facts, which the Court finds to be true, the Court FINDS, ORDERS AND ADJUDGES that the said E. Baumgartner, respondent, is guilty of contempt against this Court. * * * ''

Attached to the petition for writ of habeas corpus is a full transcript of the proceedings and testimony upon which the order of commitment was made, so that the whole record embracing all the proceedings, as well as the order of commitment, is now before the Court.

The essential characteristics of an alleged act of contempt such as that here charged, is its tendency to obstruct the administration of justice. Such a contempt does not depend so much upon the particular intent of the contemnor as upon his act. And while a mere intent to commit a contempt cannot make an act contempt, unless the act done actually tends to obstruct the administration of justice, whether or not an act constitutes a contempt of Court is determined by the reasonable tendencies of the act to obstruct the administration of justice. *Ex parte* Savin, 131 U. S. 267, 33 L. Ed. 150,

9 Sup. Ct. 699; Sinclair v. U. S., 279 U. S. 749, 73 L. Ed. 938, 49 Sup. Ct. 471; 63 A. L. R. 1258.

Due process of law in the prosecution of contempt, except that committed in open court, requires that the accused should be advised of the charges against him and have a reasonable opportunity to meet them by way of defense or explanation. This includes the right to assistance of counsel, if requested, and the right to call witnesses to give testimony, revelant either to the issue of complete exculpation or in extenuation of the offense, and in mitigation of the penalty to be imposed. Cooke v. U. S., 267 U. S. 517, 69 L. Ed. 767, 45 Sup. Ct. 390.

The rule just stated was strictly followed in the case at bar. Hence, the only point left to be decided by us is whether or not the whole record now before the Court discloses an act of contempt, plainly and specifically charged in the commitment and supported by the proceedings upon which the contempt judgment is based. If it does, the petitioner must be remanded. *Ex parte* Turner, 73 Fla. 360, 74 Sou. Rep. 314; *Ex parte* Earman, 85 Fla. 297, 95 Sou. Rep. 755, 31 A. L. R. 1226.

Trial by capable juries is the bulwark of the administration of the criminal law. Exercise of calm, unbiased and informed judgment is essential to proper functioning of juries and without it the administration of justice in cases requiring jury trials is grievously impaired if not wholly defeated.

From time immemorial the right to trial by jury has been regarded as one of the most sacred heritages of Anglo-Saxon jurisprudence. The fundamental law recognizes the jury as an appendage of the Court, and that it is indispensable as an agency to pass upon guilt or innocence of the accused in criminal cases. Consequently the jury is of unusual importance as an administrative

factor in the American judicial systems, whether State or Federal.

Therefore, whatever tends to obstruct the due administration of justice in the Courts by bringing undue influence or temptations to corruption to bear upon those who are likely to be selected for duty on juries, is an act calculated to obstruct the fair and impartial trial of jury cases in the courts, and as such, is a direct obstruction to the proper administration of justice which is punishable as a contempt.

Tampering with a member of a general jury panel, or with members of a jury panel selected to try a case, or with prospective jurors before they are sworn, is universally regarded as a contempt of court to the same extent as tampering with jurors actually sitting in the trial of a case. And it is also generally considered that the act of influencing or corrupting a juror, or attempting the same, need not be committed in the presence of the Court, in order to make it punishable as a contempt. *Ex parte* Cuddy, 131 U. S. 280, 33 L. Ed. 154, 9 Sup. Ct. 703; Marvin v. District Court, 126 Iowa 355, 102 N. W. 119; Coleman vs. State, 121 Tenn. 1, 113 S. W. 1045.

The fact also, that jury tampering is by statute made an indictable offense, for which the accused may be prosecuted criminally does not deprive the Court of its inherent power to punish the guilty party for contempt. Bradley vs. State, 111 Ga. 168, 36 S. E. 630, 50 L. R. A. 691, 78 Am. St. Rep. 157.

Approaching a juror to find out how he stands with reference to a case, or sounding out a juror to ascertain whether he can be corruptly influenced, or any attempt to influence the results of jury trials by improper means, or acts which have a tendency to enable a person to make certain the result of a litigated case involving a trial by jury, are justly regarded as acts tend-

ing to interfere with the due administration of justice, and are punishable as contempts. The inherent nature and tendency of such practices is justly regarded as evil, being viewed as an infringement upon the equilibrium of mind and independence of judgment of those jurors who are likely to be called upon to become triers of fact, and who, outside of their own conscience, are answerable to no one for errors in their decisions.

Thus in McCaully v. U. S., 25 App. D. C. 404 (certiorari denied 198 U. S. 586, 49 L. Ed. 1174, 25 Sup. Ct. 803), it was held that a prima facie case of guilt was made out in support of a charge of contempt of court by attempting to corruptly influence a juryman in a pending case, when it was shown that two days before the trial of the cause, after the defendant had twice called at a juryman's residence without seeing him, the latter called at the defendant's place of business, where the defendant stated to him that there was a man in trouble whom a railroad company was trying to down; that the juryman thereupon refused to talk, as he was on the jury, and left.

In disposing of that case the Court said:

"There is no possible difference between the corrupt solicitation of a juror at the courthouse door, or in the corridors of the courthouse, or in some obscure nook of the building, and a precisely similar corrupt solicitation at the home of the juror or the place of business of the corrupter. The offense is no greater in the one case than in the other, and its influence upon the administration of justice is precisely the same in both cases. * * * Every juror is part of the court wherever he is. Under our common law the jury is just as much a part of what may be designated as the machinery of the administration of justice as is the judge, and a corrupt attempt to influence the jury, or any individual member of it, is an offense differing only in degree from a similar attempt to corrupt the judge. Judge and jury are component parts of the

court. An attempt upon the integrity of the jury, or upon the integrity of any individual juror, is a direct attack upon the court; and the court is entitled to protect itself from all such attacks by the methods which the common law has established for the purpose, namely, by the way of summary proceedings for contempt of court."

In the case at bar the evidence warrants the finding of the Circuit Judge that the quoted statement by Baumgartner to juryman McWayne was actually made as alleged. Whether such statement was made by the petitioner without any wrongful intent and in thoughtless ignorance, or made as a means of opening up the way for further negotiations with McWayne for the purpose of contaminating or improperly influencing him as a prospective juror, is a matter about which there may be a conflict in the evidence, but not such inadequacy of proof as will warrant us in reversing the decision of the Circuit Judge that it was improperly and culpably made under the circumstances. Determination of the facts and inferences to be drawn therefrom, is necessarily left to the decision of the trial judge, and his conclusion as to the acts done, and as to their contemptuous character or effect will not be lightly disturbed by this Court on *habeas corpus*. Nor will the findings of the Judge ordinarily be set aside when reasonably supported by the facts appearing of record. State ex rel. Grebstein v. Lehman, 100 Fla. 481, 129 Sou. Rep. 818.

It matters not whether a juror be actually sworn upon a particular case, or is only a member of the panel from which the jury is to be selected. Jurors summoned to attend court in that capacity who will talk with parties about the causes to be tried, and thereby form an opinion of the merits of the cause, have been held guilty of contempt of court for so doing. Ruff vs. Reder, 2 Montana 211. Likewise a person who would approach a

juror and talk with him out of court about a pending case is likewise guilty of contempt, and subject to punishment accordingly. State ex rel. Webb v. District Court, 37 Mont. 191, 95 Pac. 593, 15 Ann. Cas. 743; Ex parte Creely, 8 Cal. App. 713, 97 Pac. 766.

In contempt proceedings if the charges duly made are admitted to be true or are manifestly established as true, and they clearly constitute a contempt whether so intended or not, appropriate punishment follows. Ex party Biggers, 85 Fla. 322, 95 Sou. Rep. 763. It is only where the matters charged and admitted or established to be true are ambiguous, or do not constitute contempt except when done with contemptuous intent, and the intent to offend is duly denied under oath, that a discharge from custody follows as a matter of course upon a denial under oath. United States v. Shipp, 203 U. S. 563, 51 L. Ed. 319, 27 Sup. Ct. 165.

Cases of tampering, or attempting to tamper, with jurors by approaching them, as was charged in the case at bar, are not within the rule requiring discharge from custody upon denial under oath of an attempt to offend, since the offense, if any, is not one which affects the outward dignity of the court nor the judges in their persons, nor is the intent of the perpetrator the *sole* element by which the contemptuous nature of what was done is to be determined. If the presence and the overt acts of the alleged contempt are proved or admitted, the offender may be presumed to have intended the ordinary consequences to be implied from his own deliberate act in addressing the juror, or prospective juror, as he did, under circumstances fully known to him, whereby he committed a flagrant breach of propriety, and interfered with the orderly administration of justice. And in such cases the outward facts and the inferences to be drawn therefrom should be ascertained

from the testimony in the usual way, under the modern practice now generally approved in such cases. Coleman vs. State, 121 Tenn. 1, 113 S. W. 1045; State ex rel. Webb v. District Court, *supra.*

The judgment of contempt being supported by the record, and the punishment being within the authority of the Court to inflict, it follows that the petitioner must be and he is hereby remanded to the custody of the Sheriff, to be held under the commitment until discharged according to law.

Petitioner remanded.

WHITFIELD, ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.

BUFORD, C.J., dissents.

BUFORD, C.J. (dissenting).—It is my view that the petitioner should be discharged for the same reasons which are stated in my dissenting opinion in the case of Charles H. Wilson, Petitioner, vs. Joughin, known here as case No. 2 this day filed.