HARDEE SLOAN v. B. A. BROWN, Sheriff, St. Lucie County.

154 So. 514.
Division B.
Opinion Filed May 10, 1934.
Petition for Rehearing Denied May 21, 1934.

*Alto Adams,* for Petitioners;

*Cary D. Landis,* Attorney General, *Roy Campbell,* Assistant, and *Angus Sumner,* State Attorney, for Respondent.

BUFORD, J.—This is an original habeas corpus proceeding wherein the petitioner seeks discharge from a commitment under a judgment entered against him by a Judge of the Circuit Court of the Twenty-first Judicial Circuit of Florida in and for St. Lucie County.

It appears from the record that the alleged contemptous conduct for which the petitioner was committed was that the petitioner on the 23rd day of May, 1932, while the Grand Jury in and for St. Lucie County was about to reconvene to investigate certain matters pending before the circuit court "did then and there in the City of Fort Pierce, Saint Lucie County, Florida, in front of the Fort Pierce Drug Store, approach one H. Lionel Meredith, a Grand Juror, and did then and there ask the said H. Lionel Meredith, a Grand Juror, to look out for him, the said Hardie Sloan, in any matters to be investigated by the Grand Jury that might involve him, the said Hardie Sloan, and did then

and there discuss with the said Grand Juror, H. Lionel Meredith, the proposition that if any violation of gambling laws was investigated by the said Grand Jury, or any other matter that would involve the said Hardie Sloan, for the said H. Lionel Meredith, Grand Juror, to look out for the interests of him, the said Hardie Sloan.

In Wilson v. Joughin, 105 Fla. 353, 141 Sou. 182, we said:

" 'When the order or judgment of a court of general jurisdiction committing the petitioner to jail for contempt is collaterally attacked by *habeas corpus,* every intendment will be indulged in support of validity of such order or judgment unless the contrary affirmatively appears. It is generally held in such cases that the recitals in the commitment record are conclusive of the facts recited, and a statement filed by the judge as to matters occurring before him is usually regarded as importing absolute verity.' State, *ex rel.* Grebstein v. Lehman, 100 Fla. 473, 482, 129 So. 818."

In Baumgartner v. Joughin, 105 Fla. 335, 141 Sou. 185, we said:

"The essential characteristics of an alleged act of contempt such as that here charged, is its tendency to obstruct the administration of justice. Such a contempt does not depend so much upon the particular intent of the contemnor as upon his act. And while a mere intent to commit a contempt cannot make an act contempt, unless the act done actually tends to obstruct the administration of justice, whether or not an act constitutes a contempt of court is determined by the reasonable tendencies of the act to obstruct the administration of justice. *Ex parte* Savin, 131 U. S. 267, 33 L. Ed. 150, 9 Sup. Ct. 699; Sinclair v. U. S., 279 U. S. 749, 73 L. Ed. 938, 49 Sup. Ct. 471; 63 A. L. R. 1258."

We also said, in the same case:

"Tampering with a member of a general jury panel, or with members of a jury panel selected to try a case, or with prospective jurors before they are sworn, is universally regarded as a contempt of court to the same extent as tampering with jurors actually sitting in the trial of a case. And it is also generally considered that the act of influencing or corrupting a juror, or attempting the same, need not be committed in the presence of the court, in order to make it punishable as a contempt. *Ex parte* Cuddy, 131 U. S. 280, 33 L. Ed. 154, 9 Sup. Ct. 703; Marvin v. District Court, 126 Iowa 355, 102 N. W. 119; Coleman v. State, 121 Tenn. 1, 113 S. W. 1045."

And further, in the same opinion, it is said:

"Cases of tampering, or attempting to tamper, with jurors by approaching them, as was charged in the case at bar, are not within the rule requiring discharge from custody upon denial under oath of an attempt to offend, since the offense, if any, is not one which affects the outward dignity of the court nor the judges in their persons, nor is the intent of the perpetrator the *sole* element by which the contemptuous nature of what was done is to be determined. If the presence and the overt acts of the alleged contempt are proved or admitted, the offender may be presumed to have intended the ordinary consequences to be implied from his own deliberate act in addressing the juror, or prospective juror, as he did, under circumstances fully known to him, whereby he committed a flagrant breach of propriety, and interfered with the orderly administration of justice. And in such cases the outward facts and the inferences to be drawn therefrom should be ascertained from the testimony in the usual way, under the modern practice now generally ap-

proved in such cases. Coleman v. State, 121 Tenn. 1, 131 S. W. 1045; State, *ex rel.* Webb v. District Court, *supra.*"

We think this case is controlled by the enunciation of this Court expressed in the cases of Wilson v. Joughin, *supra,* and of Baumgartner v. Joughin, *supra,* and in State, *ex rel.* Grebstein v. Lehman, 100 Fla. 473, 129 Sou. 818, and that upon authority of the opinions and judgments in these cases, the petitioner should be remanded to the custody of the Sheriff of St. Lucie County to be held under the commitment until discharged according to law.

It is so ordered.

Petitioner remanded.

WHITFIELD, P. J., and BROWN, J., concur.

DAVIS, C. J., and ELLIS and TERRELL, J. J., concur in the opinion and judgment.