CARROLL, Judge
(dissenting).
The grounds on which the petitioner sought release from confinement under a contempt order, which the majority holds can not be raised and considered under the expeditious remedy of habeas corpus but may be reviewed only by the slower process of appeal, were two in number.
The petitioner was the defendant and losing party in a protracted divorce suit brought against him by a common-law wife. Following an appeal to the Supreme Court, the divorce decree became effective on December 14, 1961. Under it the husband was required to pay certain permanent alimony, a balance of $62,500 of fees to the wife’s attorneys and $8,400 to appraisers, and to post a bond of $180,000 as security. Those sums, not counting the monthly payments of alimony but including needed collateral equal to the amount of the bond, aggregated $250,900.
Petitioner owned four hotels and certain other real estate, on which a lien had been imposed to secure compliance with the decree. When petitioner failed or was unable to pay those fees and post the bond, he was served on January 15, 1962 with a rule to show cause why he should not be adjudged in contempt. At the hearing on the rule on January 17, 1962 the petitioner was adjudged in contempt and sentence to be confined for a period of 180 days in the county jail. The contempt order provided he could purge himself (1) by delivering the required $180,000 bond to the sheriff and (2) by paying the attorney fees and appraiser’s fee by delivering a cashier’s check or cash to the sheriff in the amount of $70,900.[1]
Petitioner sought release on the following two grounds. That it would be improper and unlawful to confine him because the court had ordered his assets to be sold in approximately 30 days to satisfy the defaulted amounts, and the contention that he had been denied due process of law by refusal of the court to hear his witnesses on the issue of his ability to pay.
We issued a writ of habeas corpus on January 18, 1962, returnable by answer on January 23, and for hearing on January 29. *251 The return filed by the respondent set out only the fact of the adjudication and confinement under the court’s order and attached and relied on a copy of the order and a copy of the transcript of the proceedings on the contempt hearing.
The rejection by the trial court of the petitioner’s contention that a lawful order of confinement could not be made for the defaults in question because the court had ordered his properties sold to satisfy them was no "mere irregularity of procedure.” I disagree with the majority holding that such a question of law, bearing as it does on the legality of the contempt order, is not reviewable on habeas corpus.
At least, under that ground habeas corpus was a proper vehicle by which to seek to have the cause remanded for modification of the contempt order to shorten and terminate the sixth month sentence upon satisfaction of the defaulted payments through sale of petitioner’s hotels as ordered for February 19, 1962; as was done on habeas corpus in the case of State ex rel. Grebstein v. Lehman, 100 Fla. 481, 129 So. 818.
The second ground relied on by the petitioner, that of a lack of due process, was one which clearly lay within the scope of habeas corpus review. Although nonpayment was admitted, petitioner could not be adjudged in contempt lawfully unless it was made to appear that his disobedience of the court’s decree was wilful. Therefore, evidence of his inability to pay, if he could produce it, would tend to establish the absence of a wilful default, or, if not sufficient for his exculpation, could show extenuation or indicate mitigation, in les-senment of punishment. Cooke v. United States, infra.
It is not necessary to decide or to prejudge the merits of those claims of illegality. But it is apparent on a casual reading of the record of the hearing, particularly the last few pages, that petitioner’s contention of a denial of due process of law was not without merit.
It is well established, as stated in Baumgartner v. Joughin, 105 Fla. 335, 141 So. 185, 187, that in such contempt proceedings due process requires notice of the charges and opportunity to defend and that this includes “the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense, and in mitigation of the penalty to be imposed.” A pronouncement to the same effect was made by the United States Supreme Court in Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767. In the Cooke case it was held to be a denial of due process of law for the trial judge in a contempt hearing to refuse to hear certain witnesses though the evidence related only to extenuation or mitigation, and the cause was returned to the trial court for rehearing on a proper basis.
The case of State ex rel. Giblin v. Sullivan, 1946, 157 Fla. 496, 26 So.2d 509, seems squarely in point. It was a habeas corpus proceeding in the Supreme Court in which the petitioner contended and established from the record of the contempt hearing that he had been denied due process of law in the proceedings. There the departure from due process was through not having had a proper notice and opportunity to defend. But, as has just been noted, the Su* preme Court of the United States in the Cooke case gave the same significance, with reference to want of due process, to a refusal to hear witnesses that would be accorded to want of notice or lack of opportunity to be fully heard in any other respect. The importance of the case of State ex rel. Giblin v. Sullivan, supra, is that it shows where, on a writ of habeas corpus issued out of the Supreme Court of Florida, that court held, on the basis of the showing on the record, that due process had been denied in some respect in the hearing, quashed the contempt order and returned the matter to the trial court for a new hearing for that reason. See also Dykes v. Dykes, Fla.App.1958, 104 So.2d 598, in which this court held that the requirements for due process in a contempt hearing, as *252 they were set forth in the Baumgartner and Sullivan cases, are applicable to a contempt hearing for disobedience of a support decree.
On the basis of the foregoing I respectfully dissent from the majority order in this case.

. When that contempt order was made on January 17, 1962 the court by a separate order had directed that petitioner’s four hotels be sold on February 19, 1962, to satisfy said obligations.