ALLEN, Acting Chief Judge.
The appellant appeals an order adjudging him guilty of contempt of court for attempting to improperly and illegally influence a petit juror in connection with a case then pending before the jury.
At the contempt hearing before the circuit judge, the father of a jury man testified:
“Well, he came a little after 8:00, somewheres between 8:00 and 8:30, and I went to the door and invited him in. So we sat there and talked quite a *328 little while and I asked him what he had on his mind. He said, ‘I got a friend, Mr. Lowdermilk, and your son is on the jury and I want you to talk to him,’ and I told him then, I said, ‘I will not talk to him in regard to his doing anything about a jury,’ so I said ‘One juryman on the case will mess up a jury and I will not do it.’ So he left and the next morning, about 10:00 o’clock, he came back. He said, ‘I would like to know just how your son felt about it,’ and I told him, I said, ‘You know I told you I wouldn’t ask him to do anything in regard to that,’ because he had been in trial Monday and Tuesday and that was Wednesday morning, so he went on back home.
“Q Was that the entire conversation that you had with him on Tuesday night and Wednesday morning and were there other matters discussed?
“A That was about the size of the whole thing. I knew his father and I asked him about his father. He said his father and mother were dead. He told me where they were buried, and so forth.
“Q Did he tell you why he waited ten or twelve years before he made this contact ?
“A No, sir, he never said anything about that.
“Q That was the only thing he asked you to do?
“A That was what he asked me to do and I told him I wouldn’t.”
The appellant denied contacting the father of the juror and asserted that he contacted the witness about certain real estate because the witness was a real estate broker. Thus there was a direct conflict between the accuser and the accused. The trial judge, however, heard the testimony and had the right to determine which of the two parties was telling the truth. He believed that the appellant was guilty of contempt of court in indirectly attempting to influence or obstruct the jury or a juror as charged in the Rule issued against the appellant.
The appellant contends that the trial court committed prejudicial error in excluding evidence tending to corroborate the appellant, and other evidence tending to show bias or interest of the opposing witness.
The appellant further contends that the lower court erred in sustaining the State’s objection to the introduction into evidence certain documents showing that the appellant owned land in Volusia County. The lower court, in effect, ruled that the mere fact that the appellant owned property in Volusia County and had documents proving that fact was not corroborating evidence in the case and were not material to any issue raised in the case.
We find no error in the record and affirm the lower court.
In the case of Sloan v. Brown, Sheriff, 1934, 114 Fla. 739, 154 So. 514, the Supreme Court upheld the validity of a contempt sentence in a case where the grand jury was about to reconvene to investigate certain matters pending before the circuit court. The petitioner approached a grand juror and asked him to look out for him in any matters to be investigated by the grand jury that might involve him, and did discuss with the grand juror the proposition that if any violation of gambling laws was investigated by the said grand jury or any other matter that would involve the said petitioner Sloan, for him to look out for his interest.
The Supreme Court, in its opinion, said:
“In Baumgartner v. Joughin, 105 Fla. 335, 141 So. 185, 187, we said: ‘The essential characteristic of an alleged act of contempt, such as that here charged, is its tendency to obstruct the administration of justice. Such a contempt does not depend so much upon the particular intent of the contemnor as *329 upon his act. Arid while a mere intent to commit a contempt cannot make an act contempt, unless the act done actually tends to obstruct the administration of justice, whether or not an act constitutes a contempt of court is determined by the reasonable tendencies of the act to obstruct the administration of justice. Ex parte Savin, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150; Sinclair v. U. S., 279 U.S. 749, 49 S.Ct. 471, 73 L.Ed. 938, 63 A.L.R. 1258.’
“We also said, in the same case: ‘Tampering with a member of a general jury panel, or with members of a jury panel selected to try a case, or with prospective jurors before they are sworn, is universally regarded as a contempt of court to the same extent as tampering with jurors actually sitting in the trial of a case. And it is also generally considered that the act of influencing or corrupting a juror, or attempting the same, need not be committed in the presence of the court, in order to make it punishable as a contempt. Ex parte Cuddy, 131 U.S. 280, 9 S.Ct. 703, 33 L.Ed. 154; Marvin v. District Court, 126 Iowa, 355, 102 N.W. 119; Coleman v. State, 121 Tenn. 1, 113 S.W. 1045.’
“ * * * ‘If the presence and the overt acts of the alleged contempt are proved or admitted, the offender may be presumed to have intended the ordinary consequences to be implied from his own deliberate act in addressing the juror, or prospective juror, as he did, under circumstances fully known to him, whereby he committed a flagrant breach of propriety, and interfered with the orderly administration of justice. And in such cases the outward facts and the inferences to be drawn therefrom should be ascertained from the testimony in the usual way, under the modern practice now generally approved in such cases. Coleman v. State, 121 Tenn. 1, 113 S.W. 1045; State ex rel. Webb v. District Court [37 Mont. 191, 95 P. 593, 15 Ann.Cas. 743], supra.’”
In State ex rel. Franks v. Clark, Fla.1950, 46 So.2d 488, the petitioner was employed as a special investigator by the attorneys for the defendant, who was a white man charged with the murder of a Negro. The petitioner called upon a number of prospective jurors and inquired, in substance, if they could give the defendant a fair break —how they would vote on the basis of circumstantial evidence — whether they were born in the South and how they felt about Negroes. He asked one prospective juror if she was acquainted with any of the defense attorneys. When she answered in the-affirmative he suggested that she not mention that fact and told her he thought she would make a good juror. In its opinion remanding the petitioner to custody the Court said:
“The final question relates to the sufficiency of the evidence. The rule of law in this regard was stated by us in Baumgartner v. Joughin, supra [105 Fla. 335, 141 So. 188]: ‘Approaching a juror to -find out how he stands with reference to a case, or sounding out a' juror to ascertain whether he can be corruptly influenced, or any attempt to influence the results of jury trials by improper means, or acts which have a tendency to enable a person to make certain the result of a litigated case involving a trial by jury, are justly regarded as acts tending to interfere with the due administration of justice, and are punishable as contempts. The inherent nature and tendency of such practices is justly regarded as evil, being viewed as an infringement upon the equilibrium of mind and independence of judgment of those jurors who are likely to be called upon to become triers of fact, and who, outside of their own conscience, are answerable to no one for errors in their decisions.’ ”
6 Fla.Jur., Contempt, §§ 20 and 21, sets out the law generally with reference to in- *330 terfcrcnce with trial jurors and grand juries as follows:
“§ 20 * * * The jury has long been recognized as an appendage of the court. Consequently, approaching a juror to find out how he stands with reference to a case, or sounding out a juror to ascertain whether he can be corruptly influenced, or attempting to influence the results of jury trials by improper means by any acts which have a tendency to enable a person to make certain the result of a litigated case involving a trial by jury, are acts punishable as contempts. This is true although the juror has not as yet been sworn in on a particular case, or regardless of whether the act which constitutes the contempt is committed in or out of the presence of the court. Thus, the alleged act of contempt may be committed at the juror’s place of business or at his home.
“To constitute contempt of court, it is not necessary that the act accomplish its purpose. It is sufficient if there has been a wilful attempt, of whatever nature, to influence improperly the decision of the juror. Likewise, the fact that .jury tampering is by statute made an indictable offense, for which the accused may be prosecuted criminally, does not make the act any the less an act of contempt.
“§ 21 * * * As the grand jury is a constitutional part of the court, any conduct which is manifestly intended, and tends, to interfere with the proper exercise of its duties and functions amounts to a contempt of court. Thus, for example, an offer of a bribe to members of a grand jury to adjourn the jury without returning an indictment against certain persons then under investigation constitutes contempt.
“The fact that the grand jury may not be presently engaged in the consideration of matters before it does not make the unlawful act any the less an act of contempt. A request to a grand juror to look out for the interests of a certain person in relation to matters which might be considered when the grand jury reconvenes, is an act of contempt. Moreover, it is not necessary that the act of alleged contempt be committed in the actual presence of the court, nor need the attempted interference be actually successful in its results.”
If, in fact, the appellant made the statement above testified to by the father of a juror and the trial judge, in effect, so found, we think there was sufficient evidence of contempt of court. We, therefore, affirm the lower court.
Affirmed.
WHITE, J., and WILLIAMS, O. EDGAR, Jr., Associate Judge, concur.