JOHNSON, Judge.
This is an appeal from a judgment of the Court of Record of Escambia County, *189 Florida, finding the defendant, W. E. “Bill” Davis, guilty of indirect criminal contempt of court, charged in four separate counts.
Before we go into the merits and sufficiency of the facts to sustain the judgment and sentences, we feel it proper to point out that we must reverse the judgment and sentences for failure of the trial judge to comply with the provisions of Florida Rules of Criminal Procedure, Rule 1.840(a) (6), as found in 33 F.S.A. in that the judgment did not include a recital of the facts constituting the contempt of which the appellant was found and adjudicated guilty.[1] Reversal of the judgments and sentences on the failure to comply with said Rule 1.840(a) (6) would also demand a remand to the lower court for entry of a proper judgment and sentence consistent with said Rule; but, we also hold that the judgment and sentences should be reversed, without remand, because of the insufficiency of the evidence to establish the guilt of the defendant on either of the four counts, and therefore, we think it appropriate to analyze the evidence as it relates to each of the four counts.
Count one involves Joseph V. Mikita. The defendant showed a jury list to Joseph Mikita and some others, a few days before some three criminal charges against the defendant were to be tried, and asked “if anyone knew anybody on this list”, and Mr. Mikita stated that he knew the parents of one of the prospective jurors, a Mr. Cannon. The defendant, according to the testimony of Mr. Mikita, shown at page 52 of the Record, asked Mr. Mikita to “find out if the boy, (Larry Cannon) had any ill feelings toward him and I said, ‘Yes, I will ask his mother,’ . . .I called the mother and the mother says, well, she don’t know but she will ask him.” And at page 59, the result of the conversation by Mr. Mikita with Mrs. Cannon, as related by Mr. Mikita, was “. . .he says that as far as he knew Mr. Davis that he had no hard feelings and he would have to hear the case and he would decide then but he didn’t make up his mind then.” Also, on page 82 of the Record, Mrs. Lois Margaret Cannon testified that when Mr. Mikita called her the last time that she said “Larry said that he was not prejudiced, that he would give an honest opinion.” We do not see wherein the defendant, nor one in his behalf, was trying to influence the prospective juror Cannon. The substance of Mr. Mikita’s testimony, except for repeats and other immaterial statements, is that outlined supra, and we fail to find any material evidence to indicate that the defendant was guilty of any conduct that was improper, any more than a good lawyer or his client might do in inquiring about prejudice or bias or attitudes in general, without trying to influence such juror. Nothing in this testimony meets the test of clear and convincing proof or even a mere preponderance of evidence to sustain the conviction. The judgment and sentence on count one is therefore reversed and set aside.
The next count, number two, involves Hargis Patroni, Sr. Mr. Patroni’s testimony as shown on page 46 of the Record can be summed up in the one answer to a question propounded by the prosecutor as follows:
“A. Mr. Davis had a list and he asked us if we knew anyone on the list and, if we did, that might could help him in his case, and I glanced at the list and looked over it and I told him I didn’t know anyone on the list and excused myself and went out with my customer.”
Mr. Patroni’s version of what the defendant, Davis said when he exhibited the jury list to Mr. Patroni and Mr. Mikita is in conflict with what Mr. Mikita said, in that Mr. Mikita only said that Mr. Davis told them to look the list over and see if they *190 knew any of them and did not say anything about whether or not they knew anyone “that might help him in his case.”
We cannot see any preponderance of evidence or even any clear or convincing proof to sustain a conviction in contempt. We think the State failed in its burden in this count, and the judgment and sentence relating thereto should be and is hereby reversed and set aside.
The third count involved Mr. Willis Cobb. The testimony of Mr. Cobb was to the effect that the defendant Had called him and inquired as to whether or not he knew a Mrs. Eubanks and a Mrs. Sewell. Mr. Cobb said he knew Mrs. Sewell but not Mrs. Eubanks. The defendant then asked him to “ask them to help me out a little bit”; Mr. Cobb’s testimony was very scant about his conversation with the defendant — no suggestion of how defendant was to be helped or what was really wanted of Mr. Cobb. It is true that Mr. Cobb’s testimony is to the effect that he assumed that the defendant was talking about the defendant’s pending trial, but nothing concrete was mentioned by the defendant other than related supra. The fact that Mr. Cobb related this conversation to a deputy sheriff does not give enough dignity to Mr. Cobb’s testimony to suffice the burden of proof required to sustain a conviction of contempt under either theory of whether the proof must be clear and convincing or by mere preponderance of the evidence. Because of the insufficiency of the evidence we also hold the judgment and sentence on said third count are hereby reversed and set aside.
The fourth count involves Frank Patti. In this count, Mr. Frank Patti testified that he had a telephone call while he was out of the office and he returned a call — number, which turned out so he alleged, to be “Bill, your Sheriff”. Mr. Patti was advised that the wife of Bob Fielding could probably be a juror and he would find out how Mr. Fielding felt because'the sheriff had refused to let him sign a criminal bond. Mr. Patti agreed he would try to find out about Bob Fielding. About twenty-four hours later, Mr. Patti saw Bob Fielding when he, Fielding, came by to collect some money and Patti told him about the telephone call. Mr. Fielding said, in response to the question by Mr. Patti, “well, I would hang the bastard,” and explained that Sheriff Davis had refused to let him sign á bond which caused Mr. Fielding to be sore at the defendant. As to Mrs. Fielding, who was the prospective juror, there was no evidence admitted by the court from her. It is no indication that Mr. Patti was again called by defendant to ascertain whether or not Mr. Patti had found out about Mr. Fielding’s feeling or not, so we fail to see where the State met the burden of showing any tampering with the jury. The most that can be said is that Mr. Fielding would be a prejudiced juror, but we don’t know that this was conveyed to or had any effect on the wife, who was to be on the jury. In view of the lack of evidence to support the charge, the judgment and sentence in this count must be and is hereby reversed and set aside.
It is therefore our opinion, and we so hold, that the State has failed to sustain the burden with sufficient evidence to support the judgment of conviction of contempt and the said judgment is therefore reversed and the sentences imposed thereon are set aside.
The other assignments of error propounded by the appellant are either without merit or do not need to be treated by this Court.
Reversed.
CARROLL, DONALD K., Acting C. J., and RAWLS, J., concur.

. Moore v. State, 245 So.2d 880 (Fla.App.2nd, 1971) and Berman v. State, 253 So.2d 144 (Fla.App.3rd, 1971).