338 So.2d 220 (1976)
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, DIVISION OF MENTAL HEALTH, SOUTH FLORIDA STATE HOSPITAL, and James V. Diodato, M.D., Superintendent, Appellants,
v.
STATE of Florida, Appellee.
No. 75-728.
District Court of Appeal of Florida, Fourth District.
August 6, 1976.
Rehearing Denied November 10, 1976.
*221 Mary E. Clark, Tallahassee, for appellants, State of Florida Dept. of Health and Rehabilitative Services.
Robert L. Shevin, Atty. Gen., Tallahassee, and Paul H. Zacks, Asst. Atty. Gen., West Palm Beach, for appellee.
WALDEN, Judge.
Appellants, Department of Health and Rehabilitative Services, Division of Mental Health, South Florida State Hospital and James V. Diodato, M.D., Superintendent, were adjudged to be in criminal contempt of court for violating the terms of a court order. They appeal. We reverse.
This appeal has to do with the problems generated by Arthur Harold Robinson and the attempts of those in authority to solve or ameliorate them.
Robinson was charged in 1972 with two counts of lewd, lascivious or indecent assault or act upon or in the presence of a child. He has never been tried or convicted and the charges are still pending.
We pick up the history of this case from the trial court order, dated December 13, 1974:
"The history of this case is as follows:
"On January 2nd, 1973 the Circuit Court declared Arthur Harold Robinson a mentally disordered sex offender within the meaning of Florida Statute 917.12 and committed him to the custody of the Division of Mental Health for care, treatment and rehabilitation.
"In 1974 the Court received a report from the Division of Mental Health dated July 17th reflecting that further hospitalization was not necessary for Mr. Robinson and that he had been found to be not a menace to others and was ready for return to Court.
"On August 14th, 1974 the Circuit Court ordered the return of the defendant to Palm Beach County and appointed Drs. Jose Almeida and McKinley Cheshire to reexamine the defendant.
"The attorneys were unwilling to stipulate to the Court considering and ruling on the written reports so the hearing of December 6th, 1974 was conducted. At that hearing, Drs. Cheshire and Almeida testified and the Court also received the testimony of Dr. B. Rivers Ogburn who is the supervisor of the Florida State Hospital at Chattahoochee's Forensic Psychiatric Program.
"The testimony of all three physicians was in basic agreement and harmony. All agreed that Mr. Robinson had an organic brain syndrome which contributes, in part, to a disposition to molest children. They also agreed that hospitalization was no longer of any use.
"Most importantly, they all stated that if Arthur Harold Robinson is supervised, he is not a menace to others or to children; if he is unsupervised, he is a menace. Dr. Almeida testified that the supervision he had in mind was comparable to that of a child of five years. He meant, he testified, not that Mr. Robinson had the intelligence of a five-year old child, but that one must supervise him and be aware of where he is at all times as one would supervise a child of five years.
"The State's basic position is that for the psychiatrists to testify in this qualified and conditional language that Mr. *222 Robinson is no longer a menace to others is the equivalent of saying that he continues to be a menace to others inasmuch as the Court has no administrative or supervisory resources to insure that such supervision occurs. The State also admitted, with commendable candor, that prison was hardly the place to provide the supervision that Arthur Harold Robinson needs.
"This Court finds that Arthur Harold Robinson continues to be a menace to other children. This Court also finds that the type of supervision contemplated by the testimony of the psychiatrists is not available. Pursuant to the case of Powell v. Don Genung, et al., Florida Supreme Court, 306 So.2d 113, 1974, this Court has the authority to recommit the defendant.
"The Court notes that it is not critical of the efforts of the Florida State Division of Mental Health and that the dilemma posed by this case is attributable to the fact that our society has not provided the institutions, manpower or resources to supervise human beings who are in need of the type of supervision indicated in this case.
"It is therefore,
"ORDERED AND ADJUDGED that the defendant will be transported to the appropriate Florida State Hospital and committed, confined, detained and treated by the Division of Mental Health until the further Order of the Court and, in the event that the defendant shall cease to be manifestly dangerous to others, said fact shall be reported to the Court for further Order. It is noted further that the defendant has relatives who reside in Broward County. The Court requests the Division of Mental Health to house Mr. Robinson at South Florida State Hospital if that is possible." (Emphasis supplied.)
In procedurally proper contempt proceedings, appellants were charged with violating the December 13th order by releasing Robinson on "furlough." The appealed order found that appellants in the hospital "treatment" of Robinson had indeed released Robinson on several home furloughs. The trial court limited its gaze to the terms of the December 13th order providing that Robinson be "committed, confined, detained" and construed this to mean "to restrict within the limits of the hospital borders." The trial court rejected the undisputed testimony and the appellants' position that the furloughs were a necessary and proper part of Robinson's medical treatment and ignored the fact that the December 13th order required them to "treat" Robinson.
The facts showed that Robinson had received furloughs to visit his wife in West Palm Beach for short periods. He had honored the terms of such furloughs; had committed no new offenses; and had returned to the hospital as and when required.
We hold that the order, in using the terms "confined" and "treated" in combination was at the most contradictory and at the least confusing.
The appellants were obliged to afford Robinson treatment by the very words of the trial court order, plus by statute and case law. Fla. Stat. §§ 394.459(2), (4) (1975), and O'Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). Further, and properly so, a circuit court is not empowered to direct a hospital to provide any certain method of medical treatment. State ex rel. Dept. of Health & Rehab. Serv. v. Sepe, 291 So.2d 108 (3rd DCA Fla. 1974).
All circumstances considered, it is our view that the trial court erred in adjudicating the appellants to be in criminal contempt. There was a total absence of evidence that the alleged disobediences of the court order were wilful, see 6 Fla.Jur., Contempt § 10. Further, the court order said to have been violated was confusing and ambiguous in its operation, thus requiring proof of contemptuous intent. Baumgartner v. Joughin, 105 Fla. 335, 141 So. 185 (1932); Harper v. State, 217 So.2d 591 (4th DCA Fla. 1968).
REVERSED.
CROSS, J., and CALHOUN, JAMES P., Associate Judge, concur.