LARRY G. SMITH, Judge.
Joseph E. Folsom appeals an order of the circuit court finding him guilty of indirect criminal contempt growing out of his conversations with two prospective jurors. Appellant bases his appeal upon the contention that the evidence is insufficient to establish his guilt. We find the evidence was sufficient, and affirm.
Two prospective jurors, Willie Joe Land and Jerry Metzger, were summoned to appear for a term during which a civil case involving appellant was scheduled for trial. Appellant’s conversations with Land and Metzger occurred after service of the jury summons upon each of them, but before their appearance for jury duty.
*141 Willie Joe Land testified that appellant approached him at the Sweetwater Bar, and asked him to accompany him outside the building. Appellant then asked Land what his chances of serving on the jury were, and Land answered that he didn’t know. Land described the conversation that then occurred as follows: “Well, all he asked me, he asked did I know what the case was about. I said: ‘No, I don’t know what is going on,’ you know, and he said, well, it was about him, and if there was anything I could do, he would appreciate it. That’s all that was said.” This conversation was terminated when a third person came into the presence of appellant and Land.
Jerry Metzger testified that on his way home he saw appellant in the parking lot of the Sweetwater Bar and stopped. He initiated a conversation with appellant concerning his possible jury service, and in his testimony he described the conversation as follows: “I asked Joe, I says: ‘Now, if I go there on jury duty and go against you, is it going to hurt our friendship?’ And Joe says: ‘As long as you do just what you feel is right, I won’t hold anything against you,’ and that is the essence of the conversation that we had, and I found Joe to ask him that question.” Metzger also testified: “Now, I believe I said: ‘Joe, has this got to do with when you lost some cattle?’ And he said: ‘Yeah,’ or something along that, and I said: ‘Well, I don’t want to hear anymore about it.’ ” In response to the question whether appellant tried to tell him anything more about it, Metzger replied that appellant “was going to say something,” but Metzger did not allow it. The conversation ended with Metzger’s statement to appellant that if he was selected for jury duty, he would do what he thought was right.
In Baumgartner v. Joughin, 105 Fla. 335, 141 So. 185 (1932), the court discussed the circumstances under which contact with jurors may be regarded as a contempt of court, and gave a clear, though perhaps not all-inclusive, summary of the nature of acts which may be held contemptuous. After emphasizing the importance of the jury in the American judicial systems, the court stated:
Therefore, whatever tends to obstruct the due administration of justice in the courts, by bringing undue influences or temptations or corruption to bear upon those who are likely to be selected for duty on juries, is an act calculated to obstruct the fair and impartial trial of jury cases in the courts, and as such, is a direct obstruction to the proper administration of justice which is punishable as a contempt.
Tampering with a member of a general jury panel, or with members of a jury panel selected to try a case or with prospective jurors before they are sworn, is universally regarded as a contempt of court to the same extent as tampering with jurors actually sitting in the trial of a case. And it is also generally considered that the act of influencing or corrupting a juror, or attempting the same, need not be committed in the presence of the court, in order to make it punishable as a contempt. . . . (citations omitted)
jj« * * * sk
Approaching a juror to find out how he stands with reference to a case, or sounding out a juror to ascertain whether he can be corruptly influenced, or any attempt to influence the results of jury trials by improper means, or acts which have a tendency to enable a person to make certain the result of a litigated case involving a trial by jury, are justly regarded as acts tending to interfere with the due administration of justice, and are punishable as contempts. The inherent nature and tendency of such practices is justly regarded as evil, being viewed as an infringement upon the equilibrium of mind and independence of judgment of those jurors who are likely to be called upon to become triers of fact, and who, outside of their own conscience, are answerable to no one for errors in their decisions.
In Baumgartner, the contemnor approached a prospective juror and by way *142 of opening a conversation, remarked that he knew a certain defendant who was on trial for murder, stating that he was not a “bad boy,” and then asked the juror if he would be “interested in a proposition.” Of course, the facts in this case differ from those in Baumgartner, but it is clear from the discussion and the authorities relied upon by the court in Baumgartner, that the actions of appellant with respect to juror Land were well within the category of actions regarded as contemptuous. Appellant sought out juror Land, invited him out to participate in a private conversation, and by stating to Land that if there was anything he (Land) could do, appellant would appreciate it, was guilty of “sounding out” the juror, and of attempting to influence the result of the forthcoming jury trial. Whether appellant’s conduct could have had the intended effect upon the particular jur- or is immaterial, so long as it is the type of conduct which would ordinarily be viewed as having a tendency to obstruct the fair and impartial trial of jury eases. To constitute contempt of court, it is not necessary that the act accomplish its purpose. 11 Fla.Jur.2d, Contempt, § 16.
In Sloan v. Brown, 114 Fla. 739, 154 So. 514 (1934), a sentence for contempt was upheld where the contemnor approached a grand juror and asked him to look out for him, and requested the grand juror to look out for his interests if any violation of gambling laws involving him was investigated by the grand jury. A contempt sentence was upheld in State v. Clark, 46 So.2d 488, (Fla.1950), against a special investigator employed by attorneys for the defendant (who was a white man charged with the murder of a black man), called upon a number of prospective jurors and inquired, in substance, if they could give the defendant a fair break; how they would vote on the basis of circumstantial evidence; whether they were born in the south and how they felt about blacks in general. A suggestion was made to one juror, who acknowledged her acquaintance with one of the defense attorneys, that she should not mention that fact. In Strawder v. State, 170 So.2d 327 (Fla. 2nd DCA 1964), a conviction of contempt was upheld against one who approached the father of a juror, and requested that he talk with him. The contemnor then returned to the father’s home the following day and stated: “I would like to know just how your son felt about it.”
Because we find the conviction of contempt fully sustained by the evidence of appellant’s conversation with juror Land, we find it unnecessary to determine whether appellant’s conversation with juror Metz-ger, standing alone, would be sufficient to constitute contempt of court. In passing, however, it should be observed that Metz-ger exhibited the utmost in poor judgment in initiating a conversation with appellant regarding Metzger’s jury duty. Any juror who undertakes to discuss with a party any aspect of litigation in which the juror may be called to serve is flirting with a contempt citation. A juror who is selected on a case is bound by his oath to render a fair and impartial verdict, and whether or not his verdict may engender favorable or unfavorable reactions from one party or the other is totally immaterial. It is unthinkable that a prospective juror would subject his own integrity to question by contacting a litigant or any other person involved in a case in which he might be selected as a juror. Indeed, a juror who initiates such a contact, is no less likely to bring the administration of justice into disrepute than when such contact is initiated by a party or any other person. As noted in Baumgartner, jurors who talk with parties about causes to be tried and thereby form an opinion of the merits of the case have been held guilty of contempt of court for so doing. It goes without saying that one whose confidence in his own ability to judge fairly and impartially is so shaky as to require assurances of any kind from a party to the cause is not qualified to sit as a juror in the case. By the same token, it seems equally clear that a party who gives any solicited or unsolicited assurances to a juror in order to induce that juror not to disqualify himself in the case could be guilty of interfering with the proper administration of justice, and be held in contempt.
*143 Appellant’s argument for reversal relies heavily upon the decision of this court in Davis v. State, 261 So.2d 188 (Fla. 1st DCA 1972). However, we find that our decision in that case is distinguishable upon the fact that in Davis, there was no direct contact by the alleged contemnor with prospective jurors, whereas in this case there was direct contact by appellant with known prospective jurors. Appellant also brings to our attention what appears to be a drafting error in the order of the court under review. The court found that appellant asked Mr. Land “if he could help him out.” The record shows that the words actually used by appellant to Mr. Land were, according to Mr. Land, “if there was anything I could do, he would appreciate it.” The plain meaning or import of the words actually used is substantially the same as the court’s finding, and we conclude that this error has no bearing upon the merits of the trial court’s decision.
For the reasons stated, the order, judgment and sentence are AFFIRMED.
MILLS, C. J., and SHIVERS, J., concur.